WILLIAM TRAPP, Admr.

*v.*

CHARLES J. OFF.

*Opinion filed December 18, 1901—Rehearing denied February 11, 1902.*

1. RELEASE OF ERRORS—*acceptance of benefits of decree may be treated as a release of errors.* If a party accepts the benefits of a decree he cannot afterwards prosecute a writ of error to reverse it; and such acceptance operates as an estoppel, and may be treated as a release of errors.

2. SAME—*replication to plea of release of errors must deny or confess and avoid.* A replication to a plea of release of errors must deny, or confess and avoid, the matter set up in the plea; and if the replication presents no valid answer to the plea, and a demurrer is filed to the replication, the case will be considered as on demurrer to plea, and if it is sustained the writ of error must be dismissed.

APPEAL from the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Fulton county; the Hon. JEFFERSON ORR, Judge, presiding.

This is an appeal from a judgment by the Appellate Court on May 29, 1900, rendered in a certain cause in that court wherein the present appellee, Charles J. Off, was plaintiff in error, and the appellant, William Trapp, administrator of the estate of Mariah Trapp, deceased, was defendant in error, by the terms of which judgment, after reciting that said Trapp, administrator, had filed certain

pleas of releases of errors by said Off, and that the plaintiff in error, Off, had interposed his replication to said pleas, and that Trapp, administrator as aforesaid, had demurred to the replication, said demurrer was overruled; and, after further reciting in said judgment that the effect of the pleas amounted to a confession of errors, the Appellate Court found that there was error in the decree of the court below in its finding as to the judgment for $1252.06 in favor of Mariah Trapp, hereinafter set forth, and reversed so much of the decree as related to the lien of said judgment, and ordered that Off, the plaintiff in error therein, should recover from the defendant in error therein, William Trapp, administrator, the costs to be taxed by the clerk of the Appellate Court.

The material facts are as follows: On March 1, 1894, Charles J. Off filed in the circuit court of Fulton county a bill against Kate Hulitt and Nathan Hulitt, partners under the firm name of Hulitt & Co., Benjamin F. Rohrer, and Mariah Trapp, to foreclose a mortgage, executed on June 15, 1893, by Kate Hulitt and Nathan Hulitt, the former being the wife of the latter, as partners, to the said Off, conveying to him forty acres of land described as the north-west quarter of the north-east quarter of section 24, township 7 north, range 4, east of the fourth principal meridian, in Fulton county, to secure certain notes dated June 15, 1893, executed to Off by Hulitt & Co. for goods purchased by them amounting to $1100.00, being five in number, for different amounts, and running over a period of eighteen months. It was recited therein, that Benjamin F. Rohrer held an older and prior mortgage securing a note for $300.00, and that Mariah Trapp had a judgment against Nathan Hulitt in his individual capacity. Subsequently, on August 21, 1894, Off filed a supplemental bill stating that, after the filing of the original bill, he had purchased the mortgage of Rohrer and was then the owner of the same; which mortgage was upon the premises above described, dated June 27,

1892, and for the purpose of securing four notes of $125.00 each given to Rohrer by Hulitt & Co. for the purchase of the forty acres of land above described. It is alleged in the supplemental bill that the Rohrer notes and mortgage were purchased by Off and assigned to him on March 24, 1894, and that the lien of the Rohrer mortgage was superior and prior to the mortgage of Off mentioned in the original bill.

On August 21, 1894, Mariah Trapp filed her answer to the original and supplemental bills of Off, setting up that on March 11, 1891, she recovered a judgment for $1252.06 and costs against Nathan Hulitt in the circuit court of Fulton county, and that execution was issued thereon within one year after its rendition. She claimed in her answer that her judgment was a lien upon the forty acres above mentioned, prior to both of the mortgages above described, as against the interest of Nathan Hulitt therein. Replication was filed to her answer.

On October 1, 1894, a decree was entered in said foreclosure suit, taking the bill as confessed by Kate Hulitt and Nathan Hulitt for want of answer, dismissing both the original and supplemental bills as against Benjamin Rohrer, finding that the Rohrer mortgage had been assigned to and was owned by Off, and that there was due upon the same and the notes thereby secured, the sum of $403.50; that there was due to Off upon the mortgage executed to him by Hulitt & Co. for goods purchased by them, and set up in the original bill, the sum of $860.00. The decree found that the lien of the judgment of Mariah Trapp against Nathan Hulitt was prior to the lien of Off's mortgage, as set out in the original bill, to the extent of Nathan Hulitt's one-half interest in the property; it also found that the $860.00 due upon the notes and mortgage, described in the original bill, was a first lien upon all of the interest of Kate Hulitt in said premises, which the court found to belong to said partnership, but that the judgment against Nathan Hulitt in favor of

Mariah Trapp, being older than the lien of the notes and mortgage mentioned in the original bill, should take precedence over the lien of the latter mortgage upon Nathan Hulitt's interest in the premises, and that said judgment was entitled to be first satisfied out of the one-half share of said Nathan Hulitt before any of the proceeds derived from the sale of the premises should be devoted to the payment of said Nathan Hulitt's proportion to pay on said mortgage and notes were paid. The decree ordered that Hulitt & Co. should pay within forty days $403.50, with interest and costs, including solicitor's fees of $75.00, and in default of payment, that the forty acres in question should be sold at public auction for cash to the highest bidder, and that the master, making the sale, should execute certificates of sale and deeds to the purchasers. The court thereby decreed the foreclosure of both of Off's mortgages, but decreed the lien of the last mortgage in order of time a lien only upon the interest of Nathan Hulitt, until the judgment against him individually had been satisfied first out of his said interest in said mortgaged premises belonging to said co-partnership. The decree further provided that the master, after retaining his fees, commissions, etc., and paying the costs, should, out of the remainder of the proceeds of sale, pay to Off $403.50 with interest, and take receipts and file the same with his report; and that "in case said premises should sell for more than sufficient to pay the principal, interest on said mortgage and notes sought to be foreclosed in said supplemental bill, and costs of this suit, then that said master after making payment as aforesaid, bring such surplus moneys into court without delay to abide the further order thereof in distribution according to the order of priorities herein declared and found and leaving also the question of a judgment for any deficiency, if any such is found, to be then determined." The decree then provided for the execution of a deed by the master in case the premises should not be

redeemed within fifteen months. It also contained a provision that upon the execution of the deed the grantee therein should have possession of the premises.

A writ of error was sued out from the Appellate Court by Off, and a transcript of the record of the foreclosure proceedings in the circuit court was filed in the Appellate Court on May 16, 1899. The object of the writ of error so sued out was to review the decree of sale entered in the foreclosure suit. The errors assigned by Off in the Appellate Court were as follows:

"*First*—The decree of the court herein is contrary to law.

"*Second*—The court erred in its decree in finding that Mariah Trapp's lien was senior to the lien of Charles J. Off.

"*Third*—The court erred in its decree in determining as matter of law the priority of the several claims herein."

On May 16, 1899, Off, the plaintiff in error, by his attorney, suggested to the Appellate Court the death of Mariah Trapp, intestate, on March 14, 1898, and the appointment on April 14, 1898, of William Trapp as the administrator of the estate of Mariah Trapp; and thereupon, upon motion of Off's attorneys, William Trapp administrator as aforesaid, was made a party defendant in the Appellate Court and substituted for and in the place of Mariah Trapp, deceased. William Trapp as such administrator thereupon entered his appearance in the Appellate Court.

On November 21, 1899, William Trapp, administrator of the estate of Mariah Trapp, deceased, defendant in error in the Appellate Court, filed three pleas of release of errors. The first plea set up that the plaintiff in error, Off, after the rendition of the decree above set forth, and before the suing out of the writ of error, to-wit, on December 22, 1894, received and accepted the benefits of said decree by appearing and bidding at a sale of said land made by the master under the decree, and at the

sale became the purchaser of the land, and that afterwards on March 30, 1896, the master executed to Off a deed of said land, and that Off received and accepted the same; whereby he released the said errors, if any. The second plea sets up that Off, after the rendition of the decree and before the suing out of the writ of error, well knowing the errors in the decree, on December 22, 1894, purchased the said land at a master's sale, as by the report of the master and the order confirming his report, remaining of record in the Fulton county circuit court, will more fully appear; and that afterwards on March 30, 1896, Off, well knowing the errors, received and accepted from the master a deed of said premises, as by the report of the master and the order confirming the same remaining of record as aforesaid, will more fully appear; that the deed was made in pursuance of the decree and that the plaintiff in error, Off, has held possession and claimed title to the land by virtue of said deed, and now holds possession and claims title to same by virtue of the deed; whereby plaintiff in error has received and accepted the benefits of the decree and thereby released and waived the errors, if any.

The third plea filed by William Trapp, administrator, as defendant in error in the Appellate Court, sets forth that plaintiff in error, after the rendition of the decree and before the suing out of the writ of error, received and accepted the benefits of said decree, and released said errors, if any, in the decree by proceeding under the same and executing the same in the manner following: that at the date of the rendition of the decree the defendant Mariah Trapp, now deceased, had an execution lien on the land therein described by virtue of an execution in the hands of the sheriff of Fulton county, issued upon her judgment, and then levied upon said land; that after the decree was rendered and on October 19, A. D. 1894, said plaintiff in error caused a certain writing to be made and on, to-wit, the 12th day of November, A. D. 1894,

caused said writing to be filed in said cause, whereby said plaintiff in error sought and attempted to remove the lien of said execution and the lien of said decree in favor of said Mariah Trapp, since deceased, on said land, said writing being in the words and figures following:

"STATE OF ILLINOIS, }
  *County of Fulton.* }

"In the Circuit Court, August Term, A. D. 1894.—Charles J. Off *v.* Mariah Trapp *et al.*

"It is hereby stipulated by and between the said Charles J. Off complainant, and Mariah Trapp one of the defendants, that the said Mariah Trapp releases to the said Charles J. Off all of her interest of every kind and character in and to the subject matter of the said suit, and all claim of any and every kind or character, to the following described real estate, (describing said forty acres). And she does hereby consent that, upon the bringing of the purchase money into court derived from the decreed sale of the above mentioned real property, that the said complainant herein, Charles J. Off, may take a decree for the whole of the purchase money so derived, and that he may have all the receipts therefrom. It is further stipulated that the said Mariah Trapp releases the said above described land from any and all claims by reason of an execution which she now holds by virtue of a judgment against the said Nathan Hulit, (Hulitt), and which was levied by the sheriff of Fulton county thereon. The true meaning hereof being that the said Charles J. Off shall take the said land free from the alleged lien of the execution of Mariah Trapp, or in event of its sale, free from any encumbrance whatever, so far as Mariah Trapp is concerned by virtue of the above mentioned execution. The consideration for the above stipulation is the sum of sixty dollars paid to the said Mariah Trapp by the complainant, Charles J. Off, and the said Mariah Trapp now withdraws her appearance from the said case, and all pleas or answers heretofore filed herein.

"October 19, 1894.     CHARLES J. OFF, *Complainant,*
                              By GRANT & CHIPERFIELD, *his Attorneys.*
                         MARIAH TRAPP,
                              By M. F. HUFFORD, *Att'y for said Trapp.*

"Witnessed signature of M. F. Hufford,—J. Heylin."

The third plea then proceeds further to allege that afterwards on December 22, 1894, at a sale of the land

made by the master in pursuance of the terms of the decree, "said sale being made for the benefit of said plaintiff in error and at his direct instance and request, the said plaintiff in error appeared and became the highest bidder for said land," which was struck off and sold to him, and a certificate of purchase made and delivered to him; that afterward on March 29, 1895, the master filed his report of sale and the circuit court entered an order approving and confirming the report and sale; that in said report the master states that he advertised and sold the premises above described "to Charles J. Off, the complainant herein, for the sum of fourteen hundred and fifteen dollars and fifty-four cents ($1415.54) that being the total amount of his debt and costs on his two mortgages foreclosed on herein. I have made duplicate certificates of purchase for said premises, have filed one with the recorder of deeds of said county and delivered the other to the said Charles J. Off. The same being sold for cash, said land was offered as required by law," etc. The plea then sets forth the order of the court approving the report and confirming the sale. It further avers that on March 30, 1896, the master, in pursuance of the decree, executed and delivered to plaintiff in error a deed of conveyance for said land; that plaintiff in error received and accepted the same, and went into possession of and claimed title to the land under the deed, and has held possession of the same and claimed title thereto under the deed; that afterwards on October 8, 1896, the master filed his report of making and delivering the deed, and the circuit court entered an order confirming the report; that in said report the master states that he executed the deed to Off on March 30, 1896, conveying said premises, the same having been on December 22, 1894, purchased by him at a sale by the master and a certificate of purchase having been duly issued to him by the master entitling him, his assigns or legal representatives to a deed in default of redemption thereof according to law.

The plea also sets forth that the report was approved and confirmed, and further alleges that the "plaintiff in error has received and accepted the benefits of said decree, and thereby released and waived and for naught held said errors, if any," etc.

In the Appellate Court, plaintiff in error, Off, made a motion to strike said pleas from the files, which motion, after argument, was denied.   Plaintiff in error, Off, then demurred to the pleas, filing one demurrer to the three pleas and not a separate demurrer to each plea.   The Appellate Court, after argument, overruled the demurrer to the pleas.   Thereupon, upon motion of attorneys for plaintiff in error, and on December 5, 1899, the plaintiff in error filed a replication to the pleas above set forth.

In this replication plaintiff in error, Off, avers substantially as follows:   While it is true that on December 22, 1894, the master sold at public sale the land in question, and plaintiff in error purchased the same at said sale and received a deed thereof from the master, "the said moneys derived from the said sale of the said real estate have not been brought into court in pursuance to the order of said court, and that said decree has not otherwise been executed."   The replication further sets forth that William Trapp, administrator, at the January term, 1898, of the circuit court, commenced an action to enforce and carry into effect the decree to reverse which this writ of error is pending; that the suit so commenced by Trapp, administrator, is still pending in said circuit court and there undetermined and undisposed of; that therein there was filed by Trapp, administrator, a bill of complaint, which bill of complaint is set out in the replication and is substantially as follows:

Your oratrix, Mariah Trapp, represents that on March 4, 1894, Charles J. Off filed his bill in this court against Kate Hulitt, Nathan Hulitt, Benjamin F. Rohrer and your oratrix, Mariah Trapp, stating the execution of the notes and mortgage for the aggregate sum of $1100.00

upon the premises aforesaid; that Rohrer was interested in the premises by virtue of holding a prior mortgage thereon, and that your oratrix was interested by virtue of holding a certain judgment against Nathan Hulitt; that said bill prayed for a foreclosure, etc.; that afterwards on August 21, 1894, Off filed a supplemental bill stating that he had purchased of Rohrer the prior mortgage, and praying for a foreclosure of both mortgages; that a summons was served on her on August 7, 1894; that prior thereto on March 11, 1891, your oratrix recovered a judgment in this court against Nathan Hulitt for $1252.06 and costs of suit; that execution was issued thereon within one year; that some time in November, 1893, one M. F. Hufford, an attorney, undertook the collection of said judgment; that on August 21, 1894, Hufford filed an answer to the original and supplemental bills of Off in which the judgment lien of your oratrix was fully set forth; that afterwards on October 1, 1894, a decree was rendered that the amount due on the mortgage described in the supplemental bill, to-wit, the sum of $403.50, and costs of suit, was a prior lien on said forty acres; that the judgment of your oratrix was, after the payment of said purchase money mortgage, a prior lien on the undivided one-half interest of Nathan Hulitt in the land described in the original bill of Off; that there was due to Off on the notes secured by the mortgage described in said original bill the sum of $860.00; that the premises be sold by the master; that out of the proceeds the master pay all costs and then pay to Off $403.50, with interest, and bring the surplus moneys into court without delay to abide the further order thereof in distribution according to the order of priorities declared in said decree; that the master proceeded to sell the land, and on December 22, 1894, sold the same to Off for $1415.54; that on March 29 he reported the sale to this court and the same was confirmed; that $1415.54 was the amount due on the two mortgages of Off and the costs of suit;

that Off did not pay any part of the said sum to the master, other than his costs and commissions, but received from the master a certificate of sale in the usual form stating the amount of the bid of Off; that afterwards on March 30, 1896, the premises not being redeemed, the master executed to Off a deed; and that Off is now the owner of the same; that on November 12, 1894, there was filed in said cause a stipulation; (and the bill of complaint, set forth in the replication, then sets out in full the stipulation which is the same as that set forth in the third plea as above described;) that your oratrix first learned of the existence of said agreement on December 9, 1897; that the same was not executed by her or with her consent or knowledge, or by any person authorized to so execute such agreement; that she has not in any way or manner ratified or accepted the same; that M. F. Hufford, who executed said agreement by signing the name of your oratrix thereto, did not have any right or authority to execute said agreement; that said agreement is wholly void and fraudulent; that the judgment of your oratrix is in full force and effect and unpaid; "and that by reason of the said paper purporting to be an agreement of your oratrix the said decree of this honorable court has not been carried into effect and the said purchase money of said premises brought into this court for distribution according to the findings of said decree, and your oratrix is desirous of having the said decree forthwith carried into execution, but on account of the lapse of time, and the state of facts above set forth and the refusal of the said Nathan Hulitt, Kate Hulitt, and Charles J. Off to concur in and perform the said decree, your oratrix is advised the same cannot be done without the assistance of this honorable court;" that defendants, the Hulitts and Off be required to answer; that the "decree may be directed to be forthwith carried specifically into execution, and the said defendants ordered to do and concur in all necessary acts for that purpose;" that

an account may be taken, etc.; that defendants, or some of them, may be decreed to pay into court such sum as may be found to be due your oratrix by virtue of the lien of her judgment as found by said decree; that in default thereof your oratrix may be decreed a lien on said land for the amount due her. The replication then further proceeds to aver that in said bill the said William Trapp, administrator, claimed that the decree had not been executed and carried into effect; that, by reference to the assignment of errors herein, it will be seen that the errors complained of by the plaintiff in error refer and pertain to the distribution of the fund derived from said sale; that it was not and is not claimed that the order directing the land to be sold was erroneous in any particular; that the errors complained of by the plaintiff in error are to the finding and decree of the court below, wherein it was determined that the lien of Mariah Trapp was prior and superior to the partnership lien of the plaintiff in error; that, so far as the distribution of the funds of the sale is concerned, the same has neither been paid to the master, nor brought into court for distribution; that there is pending in said court a bill to carry into effect the provisions of the decree, "which the said defendant in error, William Trapp, administrator, of the estate of Mariah Trapp, deceased, in his plea of release of error fraudulently and falsely states to this court has been fully carried out."

In the replication the plaintiff in error further avers that in no respect or particular has the decree, to reverse which the writ of error is prosecuted, been in any other respect whatsoever, carried out or executed than as in this replication above stated, and that in no respect whatsoever, as affects the errors of which this plaintiff in error complains, and to correct which the writ of error is prosecuted. "The plaintiff in error shows that by reason of the facts and things alleged in said bill of complaint filed in the circuit court of Fulton county, Illinois,

by the said William Trapp, administrator of the estate of Mariah Trapp, deceased, he is precluded and barred from asserting in this court that the said decree of the said circuit court in the original suit from which the writ of error is prosecuted is fully carried into effect," etc.

On December 12, 1899, in the Appellate Court, the defendant in error, William Trapp, filed a demurrer to the replication, and therein as cause of demurrer, stated that: "(1) The replication presents no valid answer to said pleas; (2) that said plaintiff in error has not in and by his said replication, made or stated such a case as entitles him to maintain his said writ of error against this defendant in error; (3) and for divers other good causes of demurrer appearing in the said replication."

The Appellate Court overruled the demurrer to the replication, and on May 29, 1900, entered the judgment of reversal already referred to. The Appellate Court has filed no opinion, giving the reasons for the conclusion reached by it.

LUCIEN GRAY, for appellant.

CHIPERFIELD, GRANT & CHIPERFIELD, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The decree of the circuit court, to review which the writ of error was sued out from the Appellate Court, was a decree for the foreclosure of two mortgages, and for the enforcement of a judgment lien. Off, by his original and supplemental bills, sought to foreclose two mortgages, executed by Kate Hulitt and Nathan Hulitt. The decree held, that one of these mortgages, purchased by Off from Rohrer, was a prior lien upon the mortgaged premises, superior to both the judgment of Mariah Trapp and to the other mortgage, held by Off and executed directly to himself. The decree held, that the judgment

of Mariah Trapp against Nathan Hulitt was a prior lien
to the mortgage, executed by the Hulitts directly to Off.
Substantially, and without going into detail, the Rohrer
mortgage for $403.50 was the first lien. The judgment of
Mariah Trapp for $1252.06 was the next lien, so far as
the interest of Nathan Hulitt in the property was con-
cerned. The other mortgage, upon which $860.00 was
due, was the third and last lien, subject to the other two
liens above mentioned. The decree of the court directed
a sale of the premises, and that, out of the proceeds,
the $403.50, due upon the first mortgage, should be paid,
and that the surplus, if any, should be brought into court
without delay to abide the further order of the court in
distribution, according to the order of priorities as above
declared. It thus appears, that the decree was favorable
to Off, so far as his first mortgage was concerned, but
unfavorable to him so far as the last mortgage was con-
cerned. The decree was favorable to Mariah Trapp in
that her judgment was given priority over the second
mortgage, but unfavorable to her in that it was post-
poned to the first mortgage.

The decree of sale was entered on October 1, 1894.
This writ of error was sued out on May 16, 1899, nearly
five years after the entry of the decree. The pleas, which
set up release of error on the part of Off, the plaintiff
in error in the Appellate Court, show that a sale of the
property was made under the decree, and that the same
was bid in by Off, and that he obtained a certificate of
purchase and subsequently a master's deed, conveying
to him the mortgaged property.

The third plea shows clearly, that the decree was not
executed according to its terms. If it had been executed
according to its terms, the proceeds of sale, after paying
off the first mortgage of $403.50 and interest, would have
been paid into court. The property was struck off at the
sale for $1415.54, and there was a surplus over and above
the amount necessary to pay off the first mortgage and

interest. Mariah Trapp was unquestionably entitled, according to the terms of the decree, to have a portion of this surplus applied upon her judgment. But no surplus was paid into court; the whole amount, bid at the sale, was applied upon the two mortgages owned by Off, and the judgment of Mariah Trapp was cut out entirely. The amount of the bid, $1415.54, was the exact amount due upon the two mortgages. The third plea explains why and how this was done.

The third plea alleges that, on the 19th day of October, 1894, plaintiff in error caused a certain instrument in writing to be made, and, on the 12th day of November, A. D. 1894, caused that instrument to be filed in the cause, and thereby sought and attempted to remove the lien of Mariah Trapp's execution and the lien of the decree in her favor on said land. The averment of the third plea is, not that Mariah Trapp executed this instrument in writing, but that Off, plaintiff in error, caused it to be made. Nor is the averment that Mariah Trapp caused it to be filed in the cause, but that plaintiff in error, Off, caused it to be filed. What was that instrument in writing? It purported to be signed by Charles J. Off, complainant, by his attorneys, and by Mariah Trapp by M. F. Hufford, her attorney; and, by its terms, Mariah Trapp released to Off all her interest of every kind in the subject matter of the suit, and all her claim of every kind to the forty acres in question. By its terms, she consented that Off might have a decree for all the purchase money to be derived from the sale, and she released the land from all claims under her judgment and execution. By its terms, she consented that Off should take the land free from the lien of her execution. The instrument recites, that the consideration for its execution was $60.00 paid by Off to Mariah Trapp. It is evident that, if this instrument in writing was really executed by Mariah Trapp and was binding upon her, she gave away and surrendered all her interest in the decree.

The third plea then proceeds to aver that, thereafter on December 22, 1894, a sale was made under the decree of the premises in question, and that the sale was "made for the benefit of said plaintiff in error and at his direct instance and request." Of course, when the instrument in question was filed in the cause, the master, making the sale, would necessarily conclude that Mariah Trapp had no further interest in the matter. Accordingly, when he made the sale, the property was struck off to Off for the amounts due upon his two mortgages. As he was the complainant in the suit, and owned the decree so far as it applied to these two mortgages, it was not necessary for him to pay any money upon his bid except costs, fees and commissions, but he was credited upon the decree with the amounts due to him upon the two mortgages, and a certificate of purchase was issued to him for the amount of his bid. By obtaining the instrument, dated October 19, 1894, and filing it in the cause, he succeeded in having a sale made, which cut out the lien of Mariah Trapp, and obtained title to the land by simply bidding the amount, which was due to him upon both mortgages under the decree.

The third plea, which set up these facts, was a good plea of release of errors. It was held by the Appellate Court to be a good plea, because the demurrer filed to it by the plaintiff in error was overruled by the Appellate Court. Where a party accepts the benefit of a decree, he cannot afterwards prosecute error to reverse it; such acceptance operates as an estoppel and may be treated as a release of errors. (*Moore* v. *Williams*, 132 Ill. 591, and cases there cited).

In *Thomas* v. *Negus*, 2 Gilm. 700, we said (p. 703): "A party ought not to receive the benefit of a decree, and then complain that it is erroneous. If dissatisfied with it, he should abstain from doing any act, which may change the situation, or impair the right of the parties in the event of its reversal. If the decree is to be re-

versed, the parties ought to be restored to the position they occupied before it was rendered. Their rights should be reciprocal. Any other rule might be productive of great injustice." In *Ruckman* v. *Alwood*, 44 Ill. 183, we said (p. 185): "It is the settled doctrine of this court, that where a party, recovering a judgment or decree, accepts the benefits thereof voluntarily and knowing the facts, he is estopped to afterward reverse the judgment or decree on error; that the acceptance operates as and may be pleaded as a release of errors." (See also *Corwin* v. *Shoup*, 76 Ill. 246). Where a party has submitted to the decree and acted under it and obtained an advantage, he cannot be permitted to ascertain the practical effect upon his rights by one course of proceeding, and then, when dissatisfied with the result, adopt another. (*McElwain* v. *Willis*, 9 Wend. 548).

In the case at bar, Off proceeded under the decree and obtained the land. His conduct, after the entry of the decree and before suing out the present writ of error, shows that he submitted to the decree and obtained an advantage under it, and because of his acts the parties cannot now be placed *in statu quo*.

But in the Appellate Court the plaintiff in error filed a replication to the plea, and to this replication Trapp, the administrator, defendant in error in the Appellate Court, demurred. The Appellate Court overruled the demurrer to the replication, and the question arises whether this ruling was correct or not. "A replication to a plea of release of errors must deny, or confess and avoid, the cause of release set up by the plea." (2 Cyclopedia of Law and Procedure, p. 1008; *McCutcheon* v. *Sigerson*, 34 Mo. 280). The replication to such a plea must present a valid answer to it. (*Morgan* v. *Ladd*, 2 Gilm. 414). Where the replication to a plea of release of errors presents no valid answer to the plea, and there is a demurrer to the replication, the case will be considered as if on demurrer to the plea; and if the demurrer to the replication is sus-

tained, the writ of error must be dismissed. (*Thomas* v. *Negus, supra; Morgan* v. *Ladd, supra*).

The replication in this case presents no valid answer to the plea. It introduces no new matter in the case, which changes the character of the defense presented by the plea. The replication assumes that Trapp, administrator, in his pleas of release of errors, states that the decree was fully carried out, and then proceeds to set forth the substance of a bill filed in January, 1898, by Mariah Trapp, stating that the object of said bill was to carry into effect the provisions of said decree.

An inspection of the pleas of release of error, filed in the Appellate Court, does not sustain the opinion expressed by the pleader that "the pleas fraudulently and falsely state that the decree had been fully carried out." Nothing is admitted by a demurrer except that which is well pleaded. Facts well stated are admitted, but not conclusions of the pleader. The demurrer filed by Trapp, administrator, to the replication to the pleas, does not admit that they contain any fraudulent or false statements as to the carrying out of the decree. The third plea shows on its face, that the decree was not carried out, but that, by reason of an instrument in writing procured by Off, the master making the sale failed to carry out the decree. In other words, instead of requiring all of the bid, beyond the amount necessary to pay the first mortgage, to be paid into court, the master permitted Off, who bid at the sale, to take the property by bidding only the amount of his two mortgages, and thus to cut out the lien of the judgment of Mariah Trapp. These allegations of the plea do not amount to a statement that the decree was carried out according to its terms, but, on the contrary, that it was improperly carried out in opposition to its terms.

The replication lays great stress upon the alleged fact, that the "moneys, derived from the said sale of the real estate, have not been brought into court in pursu-

ance of the order of said court, and that said decree has not otherwise been executed." This allegation in the replication is no denial of any statement made in the pleas, because the third plea expressly sets up and states that no money was brought into court, and gives the reason why it was not brought into court. Off, in his replication, could not urge in his own favor, or to his own advantage, that the proceeds of the sale had not been brought into court, because the failure to bring them into court was the result of his obtaining and filing a paper, which purported to be a release of all Mariah Trapp's interest in the land under her judgment.

The replication sets up that in January, 1898, Mariah Trapp filed a bill for the purpose of having the decree executed, and its provisions carried into effect. Off sets out this bill *in hæc verba* in his replication. In that bill Mariah Trapp charges, that she never gave Hufford any authority to sign or execute in her name the instrument in writing, which released her interest in the land under her judgment. She also alleges in her bill, that she did not learn until December 9, 1897, that any such instrument was executed in her name, and then learned for the first time of its existence. The bill furthermore alleges, that she never in any way or manner ratified or accepted the instrument in question, and charges that said instrument was wholly void and fraudulent. If the allegations of the bill are true, she was imposed upon and defrauded. She was robbed of all the benefits of her decree by an instrument executed in her name, which she never authorized to be executed. Off derived the benefit and advantage from this instrument, which has already been stated and set forth, by obtaining a deed to the land at the sale under the decree without paying any money into court, and without being embarrassed by the lien of the judgment of Mariah Trapp. The bill states, that the decree had not been carried into effect according to its terms by reason of the said paper, which purported to be

194-20

an agreement with her. The bill also sets forth that Off refuses to concur in and perform the decree. Nowhere in his replication does Off either deny or admit that the allegations of this bill are true. So far as appears to the contrary, he is contending against the granting of the relief prayed for by the bill in question. So far as his replication shows, he has assumed the attitude of standing by the instrument in writing, which is set up in the third plea, because the bill alleges that he refuses to concur in and perform the decree, and he does not deny the truth of this allegation. The mere fact, that Mariah Trapp, or Trapp, administrator, charges the written instrument of October 19, 1894, to have been obtained by fraud, does not affect the question as to Off's right to claim that there has been no release of errors on his part. He made use of the instrument in question in the manner already stated, and derived substantial benefit from the decree because of that instrument. To permit him to thus occupy the position that the instrument was valid, and that he was justified in obtaining a deed to the land in the manner in which he did obtain it, and, at the same time, to permit him to seek a reversal of the decree, of which he has thus taken advantage, by a writ of error, would be to permit him not only to occupy inconsistent positions, but to take advantage of his own wrong.

We are of the opinion that the demurrer to the replication should have been sustained.

Accordingly, the judgment of the Appellate Court is reversed, and the cause is remanded to that court with directions to sustain the demurrer to the replication, and to dismiss the writ of error.

*Reversed and remanded.*

This case was originally assigned to the late Justice PHILLIPS, but, as he prepared no opinion, the case has been re-assigned.