## Talitha H. Kellner et al., Executors of Last Will and Testament of Barbara E. Kellner, Deceased, Plaintiffs in Error, v. George K. Schmidt et al., Defendants in Error.

## Gen. No. 29,452.

1. APPEAL AND ERROR—*sufficiency of replication to pleas of release of errors.* A replication to a plea of release of errors, which neither denied nor confessed and avoided the principal averment, that not only the items in the assignments of error but others decided adversely to the trustee in question were included in and formed component parts of the sum found due and accepted by plaintiffs in error, was fatally defective.

2. APPEAL AND ERROR—*admission on writ of error by motion to carry back demurrer.* A motion to have a demurrer to a replication to a plea of release of errors carried back to the plea admitted the principal averments of the plea, as did the failure to take issue thereon.

3. APPEAL AND ERROR—*estoppel by acceptance of benefits under decree to assign error therein.* A party cannot, after enforcing and accepting payment of the sum found due, avail himself of the benefits of the decree and then be heard to question, by writ of error, unfavorable rulings which entered into the determination of the amount found due, whether or not the decree be separable.

4. APPEAL AND ERROR—*effect of sustaining pleas of release of errors.* Sustaining of pleas of release of error results in a dismissal of the writ of error as to the parties who filed the pleas.

5. MASTERS AND COMMISSIONERS—*compensation of master on setting aside void stipulation of parties fixing fees.* Where parties had stipulated as to amount to be allowed to the master in chancery as fees, and thereafter one party repudiated the stipulation and relied upon the rule of the circuit court prohibiting the accepting, prior to the disposition of all objections, of any stipulation as to the amount of the fee, the stipulation was held contrary to said rule, and to the public policy of the State, and therefore void as to the parties objecting; the amount of $17,500, as a fee, was permitted to stand except as to the objector, and, as to him, the amount to be paid the master was fixed on the basis of $13,348.40, and the master was ordered to repay to such objector an amount fixed on the basis of his proportionate share of the taxed costs.

6. APPEAL AND ERROR—*when Appellate Court will not reverse finding of chancellor as to master's fees.* The Appellate Court will not interfere with the finding of the chancellor as to master's fees where the record is voluminous and many questions were involved, numerous items were considered and extensive arguments heard and

briefs considered, unless it is clearly pointed out that the court was manifestly wrong.

7. MASTERS AND COMMISSIONERS—*limit of compensation to masters in chancery.* The per diem allowance of $34 to the master in chancery was held the maximum under the theories stated in *Klekamp v. Klekamp*, 275 Ill. 98.

8. MASTERS AND COMMISSIONERS—*control of court over master's compensation.* Where a master in chancery claimed that one of the parties objecting to the amount of his fee was estopped because he voluntarily paid his proportion of the fee stipulated to be paid, it was held that the question was not solely between the master and the parties, but one between the court and one of its officers, as the court has the power to determine the reasonableness of the master's charges and to require him to return what was found to be an excess payment made in violation, at least in part, of a rule of court; and an order requiring the master to return a stated amount was proper under the circumstances, although no petition or other pleading was filed by the objector.

Error by plaintiffs to the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Affirmed. Opinion filed June 9, 1925. Rehearing denied June 20, 1925. *Certiorari* denied by Supreme Court (making opinion final).

WYMAN, HOPKINS, MCKEEVER & COLBERT, for plaintiffs in error; VINCENT D. WYMAN and AUSTIN L. WYMAN, of counsel.

ROSENTHAL, HAMILL & WORMSER, for defendants in error.

MR. JUSTICE BARNES delivered the opinion of the court.

This writ seeks a review of that portion of a decree restating the final account of George K. Schmidt and Charles J. Schmidt, deceased, as trustees under the last will and testament of Kaspar G. Schmidt, deceased, and directing payment of the sum found due from the trustees to the beneficiaries of said trust. It also seeks reduction of the allowance made to the master in chancery to whom the cause was referred for a statement of the account.

One of the four beneficiaries of the trust provided for in the said will was Barbara E. Kellner, now deceased, and the plaintiffs in error are the executors of her last will and testament. The other beneficiaries were made defendants in error, but are not complaining of the decree.

There are nine assignments of error. All except No. 9, which relates to the allowance to the master in chancery and which will be considered later, relate to rulings of the chancellor upon exceptions to the master's statement of the account. To such assignments of error defendants in error, George K. Schmidt, the surviving trustee, and the executors of the estate of Charles J. Schmidt, deceased, a former trustee, have filed pleas of release of errors. The pleas of each are three in number and substantially alike. They are designated in the record as "second amended pleas," but as they displace all previous pleas they will be referred to simply as "pleas."

To the first plea plaintiffs in error have filed a replication, to which said surviving trustee and the executors of the estate of the deceased trustee have demurred.

The first plea is to assignments of error Nos. 1, 3, 5, 6, 7 and 8, and avers in substance that the net sum found due by the decree to said plaintiffs in error on a complete examination of and adjudication with reference to the trustees' account was $16,118.83, and that it included as component parts thereof adjudication of not only the several items referred to in said six assignments of error, decided in favor of the trustees and against plaintiffs in error, but also other items decided in favor of plaintiffs in error and against the trustees; that there was also assessed against trustee George K. Schmidt, as costs due to plaintiffs in error, the sum of $1,282.86 on a complete balancing of the equities on the whole decree; that after the entry of said decree and before assigning errors herein plaintiffs in error sued out a writ of *fieri*

*facias* to enforce the collection of said sum of $16,118.83, with interest and costs, by virtue of which the sheriff collected the same in full of said George K. Schmidt, delivered the moneys to plaintiffs in error, and returned the writ fully satisfied.

The replication to said plea is to the effect that plaintiffs in error objected to each of the items mentioned in said six assignments of error; that they were separate, independent of and disconnected from and have no relation to other items in said trustees' account, and that the decree is separate and distinct with respect to each item of the account; that plaintiffs in error were allowed an appeal as to parts and portions of the decree mentioned in said assignments of error; that the appeal operated as a severance of the same from the remaining portions of the decree, and that they have heretofore dismissed their writ of error as to all parts and portions of said decree not specifically set forth in said assignments of error.

All these allegations are to the effect that the decree is severable, and some of them merely argumentative. But the fatal defect of the replication is that it neither denies nor confesses and avoids, as it should (2 Cyc. Law & Proc. p. 1008), the principal averment in the plea that not only the items in said assignments of error but others decided adversely to the trustees were included in and formed component parts of the sum found due and accepted by plaintiffs in error. The motion of plaintiffs in error to have the demurrer carried back to the plea admits such averment, as does the failure to take issue thereon. (*Thoeming v. Hawkins,* 291 Ill. 454.)

Nor are any of the allegations in the replication inconsistent with such averment. The several items referred to in the assignments of error might relate to parts of the account distinct from and independent of other parts or items thereof, and each and all, nevertheless, enter into and become a component part of the total sum decreed due.

Such averment of the plea thus standing admitted presents the question of law whether plaintiffs in error, after enforcing and accepting payment of the sum found due and thus availing themselves of the benefits of the decree, can be heard to question unfavorable rulings which entered into the determination of the amount found due them.

That one who has accepted the benefits of a decree cannot afterwards prosecute a writ of error to reverse it has been frequently passed on by the Supreme Court of this State. (*Thomas v. Negus,* 7 Ill. 700; *Morgan v. Ladd,* 7 Ill. 414; *Holt v. Rees,* 46 Ill. 181; *Corwin v. Shoup,* 76 Ill. 246; *Moore v. Williams,* 132 Ill. 591; *Trapp v. Off,* 194 Ill. 287; *Scott v. Scott,* 304 Ill. 267; *Gridley v. Wood,* 305 Ill. 376.) That being so we need not consider cases cited from other jurisdictions. Many of them are to the effect that a party who has received and accepted a part of a judgment or decree to which he is absolutely entitled, and whose right thereto will not be affected by a reversal, may have the judgment or decree reviewed as to parts that are controverted. In most of such cases, however, the sum collected or paid includes only an admitted or uncontroverted part of the demand and is clearly severable from matters controverted. But this is not such a case. Here an accounting was had which required the adjudication of controverted items on both sides of the account to determine the balance, and involved rulings favorable as well as unfavorable to both sides. The balance, therefore, does not represent admitted or uncontroverted items alone, nor merely those decided adversely to plaintiffs in error. Into it is merged all the items and rulings of the court for and against the interests of each party.

But whether or not the decree in such a case is severable, plaintiffs in error having availed themselves of its benefits must be held, both under the general rule (3 C. J. 682; notes to 29 L. R. A. [N. S.] 2) and

the authorities in this State, to have accepted the unfavorable as well as the favorable rulings.

The basic facts here calling for its application are not different from those in *Gridley v. Wood, supra,* where, as here, a party demanded and received payment of that part of a decree in her favor and then sued out a writ of error to reverse that part against her interest. The payment in that case, contrary to this, was of an unquestioned part of the decree. Nevertheless, the Supreme Court, following the rule it had previously laid down, said: "She could not do this. She was bound, if she accepted the benefit of the decree, to accept the *whole* decree, and her receipt of that which was in her favor operated as a release of errors of that part of the decree which was against her interest." (p. 382.) We think that holding is clearly against the theory of the replication that a party may accept the benefits of a decree—even though it be severable—and have it reviewed as to rulings or parts of the decree unfavorable to him.

Interpreting its earlier cases (*Thomas* and *Morgan* cases, *supra*) as holding that "a party cannot avail himself of that portion of a decree which is favorable to him, and secure its fruits, and then reverse in an appellate court such portions as militate against him," the Supreme Court in the *Holt* case, *supra,* elaborating upon reasons for the rule, said:

"If a decree is to be reversed, the parties should be placed *in statu quo*. It would be manifestly unjust to permit Clapp to take all the money the decree gives him, and then speculate upon the possibilities of getting more by means of a writ of error. Suppose the decree should be reversed, and on another hearing, the court upon some new evidence, should find due him a still smaller sum. This might easily happen, * * *. But if paid into court under the pressure of a decree, and after a reversal of such decree, it is ascertained by the court that its former decree was for too large a sum, the party having paid would be entitled to a restoration of the excess. * * * We are

clearly of opinion, that a party cannot accept money, directed to be paid him by a decree, and then ask a reversal on the ground that it did not give him enough. His acceptance was a ratification." (p. 183.)

If, as according to the pleas, there were controverted items on both sides of the account, a reversal of this decree might entail like difficulties as to placing the parties *in statu quo*.

We think, therefore, the plea is good and the replication does not present a valid answer thereto. Hence the demurrer to the replication must be sustained.

To the second and third pleas, plaintiffs in error have filed general demurrers. The second plea is as to the second assignment of error "in deducting from the allowance for trustees commissions of George W. Kellner, deceased, the sum of $2,432.79." The plea contains substantially the same averments as in the first plea as to the sum, interest and costs, found due plaintiffs in error, and its enforced collection, and alleges that on a complete examination of and adjudication in said accounting commissions to the extent of $20,000 were allowed the trustees, and deducted from the gross trust estate to be distributed; that the share thereof allowed George W. Kellner (as one of the former trustees, now deceased, whose share is claimed by plaintiffs in error as executors of the estate of his sole legatee) was $3,333.33 less $2,432.79 excess payments which had been made by the trustees to him for the period he acted as trustee, with interest, and which was charged back to them in the accounting and of which plaintiffs in error were allowed their share as beneficiaries of said excess payments; that said commissions and overpayment were considered and included in the balance of $16,118.83, and that the item $2,432.79 thus became an inseparable part of the trustees' accounting.

The second plea, therefore, is the same in effect as the first plea, namely, that the determination of the item complained of was the result of balancing debit

and credit items entering into the account of said George W. Kellner as one of the trustees, all of which were included in the balance or sum so found due and accepted by plaintiffs in error. For the same reasons it must be sustained and the demurrers thereto overruled.

The third plea, which is to each and all of said assignments of error, alleges that the net amount of costs found due plaintiffs in error on a complete balancing of the equities of the whole decree was $1,282.86, the payment of which was enforced by the writ of *fieri facias* sued out by plaintiffs in error and accepted by them as aforesaid.

This plea merely amplifies averments as to costs contained in the other two pleas, and not being prepared to say that enforced payment of the costs alone, without regard to whether there was also satisfaction of the entire decree, estops questioning the latter, we are inclined to sustain the demurrer. But sustaining the demurrer to the third plea can have no practical effect if the other two pleas be sustained; for as they together are to all said eight assignments of error the sustaining of them must result in a dismissal of the writ of error as to the defendants in error who filed said pleas. (*Trapp v. Off*, 194 Ill. 287, 303.) So, as to them, and all other defendants in error, except Sigmund Zeisler, they not having appeared or been brought into this court by process, that will be the order of this court.

The writ remains before us, however, upon the only remaining assignment of error to be considered, that relating to the allowance to Sigmund Zeisler for his services other than taking and reporting the evidence, rendered as master in chancery and special commissioner, pursuant to the various orders of reference, to which Zeisler has assigned cross errors.

These orders were made in various cases that were consolidated, involving two bills, a cross-bill and seven separate appeals from orders of the probate court.

The matters at issue were before said Zeisler from February 12, 1915, to December 1, 1920, when he ceased to be master in chancery. Thereafter the matters were re-referred to him as special commissioner. As such he rendered his final report June 17, 1922. He took a great mass of evidence, heard extended arguments and considered submitted briefs from time to time on numerous issues of law and fact, many of which the decree properly finds were complex and intricate in their nature. The decree also finds that pursuant to an order of court entered February 6, 1921, the "parties herein" paid $7,500 to said Zeisler on account of his services herein, other than taking and reporting evidence; and pursuant to stipulations made two other payments to him on such account, $5,000, May 1, 1921, and $5,000, June 17, 1922, the latter after said Zeisler had completed his final report and had ruled upon all objections thereto and had directed it to be filed.

The decree finds that such payments were made in four equal shares, one by the Kellner executors, subject, however, to the taxation and apportionment of the costs by the decree of court herein.

It also finds that there was a rule of court in part as follows:

"(b) No master shall, prior to the disposition of all objections to such report, request of or accept from any party litigant, or his counsel, any stipulation as to the amount of his master's fees. Nor shall he, prior to the taxation of his fees, request or receive any payment on account of his services upon such reference except for fees already accrued for taking and reporting of testimony at the statutory rate, and taxable stenographer's fees."

The decree further finds that on the hearing of the matter of taxation, etc., all the parties except plaintiffs in error stood by said stipulations and did not object to the court's taxing the master's and commissioner's fees in accordance therewith; that the ag-

gregated payment of $17,500 was not unreasonable in view of the character and extent of the services rendered by said Zeisler. But upon the objection of the Kellner executors to taxing his fees on the basis of said stipulations the court held that they were contrary to said rule of court and to the public policy of the State, and, therefore, were void and not binding upon the Kellner executors.

At said hearing said Zeisler filed a statement of his services, and insisted on the validity of said stipulations. The decree finds that such statement was true in substance and fact; that in the services rendered by said Zeisler between February 12, 1915, and June 17, 1920, he actually spent 392 3/5 full working days, and that an intelligent discharge of the duties of a master in chancery would in ruling upon the evidence and reaching his conclusions of law and fact, and reporting the same, require at least that length of time, for which it allows him $34 per day.

Thereupon the court ordered that except as to the Kellner executors the fee for such services stand at $17,500, to which the other interested parties assented, but as to the Kellner executors the compensation for said Zeisler's services as aforesaid should be taxed as part of the costs at $13,348.40, (being at $34 per day for 392 3/5 days) and the court ordered that said Zeisler repay to the Kellner executors $622.74, being 3/20 of the difference between the two sums aforesaid, and on the basis of their proportionate share of the taxed costs.

Plaintiffs in error urge that the court erred in these several findings, contending that the special commissioner's final report is unnecessarily voluminous; that he spent and charged for an unnecessary length of time, of which he kept no accurate record, and part of which was due to his failure to consider the case while the testimony and arguments were fresh in his mind, and because he did not require the parties to proceed more rapidly to a final conclusion as urged

to do by the Kellner executors; and that the facts of the case were not complicated nor the questions of law intricate.

The cross errors are to the effect that the court erred in requiring said Zeisler to repay any sum of money whatever because there was no petition or proper pleading on which to base the order, because the moneys were paid voluntarily, because plaintiffs in error were estopped from questioning the validity of said stipulations, because the stipulations were not contrary to public policy and void, and not contrary to said rule of court, and because a greater compensation than $34 per day was permissible.

Presumably these several contentions were urged upon the consideration of the court at the time of taxing the costs, and doubtless it was better able from its greater familiarity with the questions involved in the case, as disclosed not only by the record but by the arguments heard upon the exceptions, to determine how much time would reasonably be required by the master in considering and reaching his conclusions, in view of the questions involved, the numerous items considered, the many controversies over them, and all the circumstances of the case. As the chancellor was in so much better position to determine the question than we are, we ought not to disturb his specific findings thereon unless it is clearly pointed out that the court was manifestly wrong. Contrary conclusions and general statements to the contrary by counsel for plaintiffs in error are not sufficiently convincing or substantiated to justify us in reversing the decree in this respect or to enable us to say with any degree of approximation what was the maximum of time the master could consistently and reasonably have spent in the rendition of his services. It would impose a burdensome task on this court, with such a voluminous record to examine, to attempt to say so. It would practically require us to reconsider in the position of the master, without regard to the many

things that consume time and are not disclosed in a record, every item of extended accounts and every controversy of fact and law submitted to him.

We have, however, looked into the record to determine the character of the questions of fact and law involved, and have examined the master's report. The abstracts contain over 11,000 pages, and the printed master's and special commissioner's report 224. The pleadings and parties were numerous. There was involved an accounting both with executors and with trustees covering many items and running for over a period of 15 years. The total receipts in the executors' account were $1,874,246.40, and the disbursements $1,406,636.65, of which $63,772.19 were disallowed. An appeal on these matters is now pending in this court. A restatement of the trustees' account as set forth in the decree shows receipts of $804,431.34, disbursements $716,563.96, and there were items disallowed and charged to the trustees, covering over 7 pages of the decree, aggregating $47,283.08. The questions raised by the writ of error relate to the matter. An examination of the master's report shows that very many of the items were objected to and considered by him, and we are not prepared to say that the report goes into a more extensive consideration of the same than was necessary in order to present to the chancellor an intelligent and adequate understanding of the questions of law and fact he was called upon to decide. The transcript of the testimony covers 7,225 pages and the exhibits contain 7,000 folios of 100 words each. The briefs of plaintiffs in error submitted to the master covered 1,525 pages, including hundreds of pages of citations of authorities closely typed. Over 125 objections were made to the report, concerning principally questions of law, and there were many contested questions of fact, as shown by the evidence and the master's report. Some of the delay in closing the case complained of was incident to the master's ill-health, and some attributable to counsel.

Whether there was unnecessary delay, however, we need not consider if from all that is disclosed by the record and the undisputed testimony of the master bearing upon the time taken by him, and in view of the better opportunity of the court to determine whether the master actually and reasonably consumed as much time as was allowed him for his services, we are unable to say that the chancellor was wrong in his findings thereon.

Nor are we disposed to change the decree upon the contentions made by the master. The per diem allowance of $34 was the maximum under the theories stated in *Klekamp v. Klekamp*, 275 Ill. 98.

As to the claim of estoppel against plaintiffs in error in having voluntarily paid the master their proportion of the $17,500, and as to the fact no petition was filed in the matter (which was seemingly unnecessary in view of the fact, as found by the decree, that the payments were made subject to taxation and apportionment of the costs by the decree, and also in view of the fact that on the hearing of the motion to tax costs the master voluntarily appeared and testified) we think it enough to say that the question is not solely one between plaintiffs in error and the master, but one between the court and one of its officers, it being one within the power of the court to determine the reasonableness of the master's compensation and to require him as an officer of the court to return what was found to be an excess payment made to him in a case referred to him by the court and made in violation, at least in part, of a rule of court.

So far, therefore, as the decree relates to the compensation to be paid to the master and special commissioner, defendant in error Sigmund Zeisler, it will be affirmed, and the writ of error will be dismissed for the reasons stated as to all other defendants in error, at plaintiffs in error's costs.

*The decree affirmed as to defendant in error Zeisler,*

*and the writ of error dismissed as to all other defendants in error.*

FITCH, P. J., and GRIDLEY, J., concur.