**BEARDEN et al. v. TEXAS CO. et al.**

No. 12453.

Court of Civil Appeals of Texas.

May 30, 1931.

Rehearing Denied July 11, 1931.

McLean, Scott & Sayers, of Fort Worth, Kay & Akin, of Wichita Falls, and Bouldin & Zively, of Mineral Wells, for appellants.

H. S. Garrett and H. R. Wilson, both of Fort Worth, Marshall & King and Fred T. Arnold, all of Graham, A. H. Carrigan, of Wichita Falls, McFarlane & McFarlane, of Graham, Bullington, Boone, Humphrey & King and Kilgore & Rogers, all of Wichita Falls, W. B. Hamilton, of Dallas, G. R. Pate, of Fort Worth, T. G. Thornton, of Olney, Scay, Seay, Malone & Lipscomb and Worsham, Rollins, Burford, Ryburn & Hincks, all of Dallas, Cantey, Hanger & McMahon, of Fort Worth, Raymond M. Myers, of Wichita Falls, S. A. Penix, of Graham, and J. R. Creighton, of Mineral Wells, for appellees.

**DUNKLIN, J.**

This appeal is from a judgment of the district court of Young county rendered in three separate suits which were consolidated and tried as one, and in which there were numerous interventions and cross-actions by a multitude of parties. One of those suits was by Lee O. Bearden to recover title to interest in 525 acres of land devised to him by the last will and testament of his father, A. L. Bearden, deceased, as hereinafter shown. In order to establish his right of recovery, and as a part of his suit for title, he sought by an action in equity, in the nature of a bill of review, to set aside three judgments which had been rendered against him in the same court; one being in cause No. 8025, in which Ima Jean Raby and two others of his children had recovered title from him as his heirs upon an allegation that he was dead; another being a judgment rendered in cause No. 7494–B, partitioning the mineral rights in 525 acres of land devised under the will of his father between the devisees and their heirs and assignees; and another being the judgment rendered in cause No. 7473–B, purporting to fix the rights of all the devisees and their heirs and assignees, and Mrs. Annie E. Bearden, the surviving wife of A. L. Bearden, in the minerals in the 525-acre tract, and decreeing a partition thereof among them.

Another one of the consolidated suits was by E. B. Ritchie, as guardian of the estate of Mrs. Annie E. Bearden, a non compos mentis, widow of A. L. Bearden, deceased, to recover title to portions of the same tract and likewise seeking to vacate the judgments rendered in said causes Nos. 7494–B and 7473–B. Another of the consolidated suits was by Bessie Lee Griffin, formerly Bessie Lee Morgan, granddaughter of one of the devisees of A. L. Bearden, deceased, joined by her husband, J. T. Griffin, who will be designated as plaintiffs, in which she, by cross-action, also sought to set aside the two judgments last above mentioned and to recover title to the interest in the same tract, which had been devised to her by A. L. Bearden.

In each of the three suits plaintiffs also sought to cancel and vacate oil and gas leases on portions of the 525-acre tract, one of which was made by R. E. Myers, as guardian of the estate of Mrs. Annie E. Bearden, non compos mentis, and R. E. Bearden and Pleasant Bearden, as executors of the estate of A. L. Bearden, deceased, to Miss Nancy E. McChesney. Another was a lease to the Panhandle Refining Company and Harry Hines, executed by R. V. Tidwell, receiver appointed in cause No. 7473–B, and which lease was later acquired by the Texas Company, one of defendants in the suit.

Prior to the rendition of those judgments there were numerous transactions and judi-

cial proceedings which will be recited because they are involved in numerous pleadings and legal propositions of different parties to the suits.

Title to the 525 acres of land, which hereinafter will be referred to as the land in controversy, was acquired by A. L. Bearden on December 21, 1906. At the time that conveyance was made to him, Mrs. Annie E. Bearden was his wife, and the title so acquired became vested in the community estate of the two spouses. The property was held and occupied by A. L. Bearden and his family until the date of his death, which occurred on July 24, 1918. He left a last will and testament which was duly probated in the county court of Young county, in which county he resided at the time of his death and in which a part of the tract in controversy was located. By the terms of the will the undivided one-half interest of the testator in the land was devised to his wife, Mrs. Annie E. Bearden, for her use and benefit during her life, with the remainder to their children and grandchildren in the following proportions: An undivided one-tenth interest in each of his eight children, namely, Pariso Hill, wife of N. B. Hill, Pleasant Bearden, R. E. Bearden, Lora Griffin, wife of T. L. Griffin, Hattie Claiborne, Lee O. Bearden, Willie McSpadden, wife of Carl McSpadden, Lucille Claiborne, wife of G. C. Claiborne; and an undivided one-tenth interest to his granddaughter, Bessie Lee Morgan, daughter of Ola Morgan, deceased, and an undivided one-tenth interest to ten other grandchildren, share and share alike, who were the children of Cleopatra Wilson, the deceased daughter of the testator. Following are other provisions of the will:

"And my executors hereinafter named are hereby authorized and instructed to sell all of my live stock as soon after the probate of this will as they may think to the interest of my estate, and to distribute and pay out the proceeds of such sale to my heirs and devisees above named, according to their interest in same by the terms of this will; and, my executors are hereby authorized and empowered, as soon after the death of my wife, the said Annie E. Bearden, as they may deem to the interest of my estate, to sell all the real estate and all personal property then remaining, and to make title to same, and to execute, acknowledge, and deliver proper deed or deeds of conveyance to the purchaser, the property to be sold in bulk or by parcel as may appear to my executors to be to the best interest of my estate; and the proceeds of the sale to be divided among and paid to my said above named children and grandchildren in the proportion that my property is hereinabove willed to them * * *

"I hereby constitute and appoint my sons, Pleasant Bearden and R. E. Bearden, and my sons-in-law, Carswell McSpadden and P. S. Claiborne, joint executors of this will, and request that all four of them qualify as such; but should all four not be living or any of them disqualified for any reason at the time my will is probated, the ones of the four then living and qualified shall qualify as executors and carry out the terms of this will;

"It is my will that no other action shall be had in the court in the administration of my estate other than to prove and record this will and to return an inventory and appraisement of my estate and list of claims; and that no bond or other security be required of my executors.

"Codicil.

"Whereas, I, A. L. Bearden, of the County of Young and State of Texas, have heretofore made my last will bearing date the 12th day of February, A. D. 1917; Now, I do by this writing, which I declare to be a codicil to my said will to be taken as a part thereof, will and direct that when a sale and distribution of the proceeds thereof of any part of my property is made by my executors that the one-tenth interest or part thereof, which said will directed to be paid to my granddaughter Bessie Lee Morgan, be paid to my daughter Lou Griffin, in trust for the said Bessie Lee Morgan, to be held and invested by said Trustee for the use and benefit of the said Bessie Lee Morgan, and to be paid out by said Trustee for the use, maintenance and education of the said Bessie Lee Morgan, as her needs may require and as may appear to the interest of the said Bessie Lee Morgan by the said Trustee; and when the said Bessie Lee Morgan shall marry or when she shall become twenty one years of age, the balance remaining with the said trustee of said trust estate shall be paid to the said Bessie Lee Morgan."

On October 7, 1918, the will was admitted to probate, on application of Pleasant Bearden and R. E. Bearden, and they were appointed administrators of the estate with the will annexed. Thereafter they duly qualified as such administrators by taking the statutory oath and giving the bond fixed by the court, which was duly approved. Carswell McSpadden and P. S. Claiborne, also named as executors in the will, failed to apply for appointment as such, or to join in the application for the probate of the will.

The administrators so appointed filed an inventory and appraisement of the estate, which was duly approved and in which they listed the tract in controversy as community property of A. L. and Annie E. Bearden. Thereafter they proceeded to serve as administrators throughout all subsequent proceedings relative to the estate.

At the time of the death of A. L. Bearden, his wife, Mrs. Annie E. Bearden, was insane, and she has been hopelessly insane ever since; and at the date of the trial she was approximately 90 years of age. There have been three separate guardianships of her estate;

three guardians having been appointed, to wit: The first, R. E. Myers, who was appointed October 7, 1918, and who served as such until October 7, 1924, when Frank H. Wilson was appointed to succeed him, and the latter continued to act as guardian until the appointment of E. B. Ritchie, on July 16, 1929.

Each of the guardians so appointed qualified as such by taking the oath and giving the bond fixed by the court, which was duly approved. During the terms of their respective appointments, Myers and Wilson filed their annual reports as required by the statutes, all of which were duly approved. They were also granted authority by the county court to do many things, including the expenditure of funds for the support, maintenance, and care of Mrs. Annie E. Bearden; the execution of the lease to Miss Nancy E. McChesney, referred to above; the investment of funds belonging to the ward in Liberty Loan Bonds; to execute division orders of oil produced from the land in controversy; employing a gauger for such oil; make contracts for pipe line connections; lend money belonging to the estate of the ward; construct fences, pay taxes on the ward's estate, etc.

Prior to the respective applications made by Myers and Wilson for appointment as such guardians, no proceedings had been taken for the trial of Mrs. Annie E. Bearden for lunacy, under the provisions of chapter 12, beginning with article 4267 of title 69, Rev. Civ. Statutes of 1925. Nor did those applications for guardianship contain any allegation that such proceedings had been taken therefor. And while the orders appointing those guardians recited findings that Mrs. Bearden was of unsound mind, they contained no findings of conviction of lunacy prior thereto under the foregoing statutes. But before the appointment of E. B. Ritchie as guardian, Mrs. Bearden was arrested, tried, and found to be a person of unsound mind, all in accordance with the provisions of those statutes, and the application for the appointment of Ritchie contained allegations of those preliminary proceedings, and the order appointing him recited that those proceedings had been taken.

After Ritchie had qualified as such guardian and on the same day, the county court appointing him made an order authorizing him to institute his suit herein, which was one of the consolidated suits referred to above, and to represent his ward in all the proceedings involved in the other two of the consolidated suits; and also to employ counsel for that purpose. All steps taken by Ritchie in those three suits were under and by virtue of authority so granted to him.

On June 11, 1924, Miss Nancy E. McChesney, to whom the oil and gas lease had been executed by Myers, the guardian, and the executors, filed an application in the county court of Young county, in cause No. 655 in that court, in which the estate of A. L. Bearden, deceased, was being administered, for a partition of the mineral rights in the land in controversy between herself and all other parties interested in the 525-acre tract, in order to set apart to her the interest which she had acquired under her lease. Upon the filing of that application, a citation by publication was duly issued and served as provided by the statutes, requiring all parties interested in the estate, and specifically naming all the devisees, including Lee O. Bearden, also Annie E. Bearden and R. E. Myers, her guardian, Bessie Lee Morgan and Lou Griffin, trustee of her estate, and the two executors who had been appointed by the court, to appear on the first Monday in July, 1924, then and there to answer the application so made. An answer was filed to said application by R. E. Myers, as guardian of the estate of Annie E. Bearden, non compos mentis, and R. E. Bearden, one of the executors of the estate of A. L. Bearden, deceased. Later a separate answer was filed by both the executors alone, in which the jurisdiction of the county court to determine the issues was challenged, on the ground that such jurisdiction was in the district court and not in the county court, in that Nancy E. McChesney was not entitled to participate in said estate as a devisee or heir, but that her claim was adverse to the estate and to all parties entitled to share therein under the will; and her title to the lease was challenged also on the ground that prior to the order of court appointing Myers as guardian, Mrs. Annie E. Bearden had never been adjudged non compos mentis by the county court upon complaint made and trial as provided by the statutes, and that therefore the appointment of Myers as her guardian without that preliminary step being taken was void, as was also the lease executed by him thereafter. There were other grounds alleged for opposing the partition, not necessary to be now noted. On July 24, 1924, the application for partition was duly heard and granted; the order granting the same containing recitals that evidence and argument of counsel were all heard and duly considered. The order contains the further recital of appointment of commissioners of partition to so divide the land as to set apart to Miss McChesney the interest conveyed to her by her lease; and the partition made by the commissioners, as required by that order and reported to the court, was duly approved. All the parties resisting the application duly excepted to the action of the court and gave notice of appeal to the district court of Young county, where it was docketed as cause No. 7494–B. In that court all the parties who resisted the partition in the county court filed pleadings presenting substantially the same defenses as those urged in the county court. The case

452

was tried by the district court and a judgment was rendered reciting the appearance of the executors and all the devisees under the will and Mrs. Annie E. Bearden, in person and by Myers, her guardian, and Bessie Lee Morgan, a minor, by Frank Wilson, her next friend, also by Mrs. Lou Griffin, trustee of her estate, denying the prayer of the opposing parties for cancellation of the lease held by Miss McChesney, and decreeing a partition of the mineral rights in the entire tract between the parties; awarding to Miss McChesney the mineral rights in one half of the entire tract, subject to the royalties reserved in her lease in favor of Mrs. Annie Bearden, and the other half of such mineral rights in their entirety to R. E. and Pleasant Bearden, as executors and all the devisees named in the will of A. L. Bearden, deceased, subject to the life estate of Mrs. Annie Bearden in that half; also finding that the property was susceptible of partition in kind and appointing commissioners to partition it in accordance with that decree. The commissioners so appointed divided the entire tract into six separate lots shown by plat made, and awarded to Miss McChesney the mineral rights to lots Nos. 1, 4, and 5, and to the other claimants named in the judgment lots 2, 3, and 6. On July 26, 1924, the district court entered an order approving that report and decreeing a partition in accordance therewith. No appeal was prosecuted from that judgment by any of the parties.

During the month of June, 1924, a discovery well was brought in about 1,000 feet northeast of the tract of land in controversy, and soon thereafter a line of other producing oil wells was drilled near the north and east boundaries of that tract, all producing oil in paying quantities about 150 feet distant from the Bearden boundaries. In order to avoid the drainage of oil from the tract in controversy, an urgent necessity arose for the immediate development of that tract by the drilling of wells thereon, and in order to meet that emergency, and to insure the validity of oil leases which might be necessary to accomplish that end, the suit in cause No. 7473–B was instituted in the district court of Young county on July 23, 1924, in the names of the executors and all the deviseees under the will of A. L. Bearden, deceased, including Lee O. Bearden, and their heirs and assigns, as plaintiffs, against Nancy E. McChesney and R. E. Myers, as defendants, praying for appointment of a receiver vested with authority to execute oil leases on the land in controversy, and seeking a cancellation of the McChesney lease, on the ground that the order appointing Myers guardian and the lease executed by him were void for lack of jurisdiction in the county court to appoint him as guardian until Mrs. Annie E. Bearden had first been adjudged insane under the statutes referred to above.

On August 25, 1924, the court entered an order granting Annie Bearden, through Frank Wilson as next friend, leave to intervene in the suit; and on the same day a plea of intervention was filed by Annie Bearden, acting through Frank Wilson as her next friend, adopting the pleadings of the plaintiffs in the suit, and likewise praying for a cancellation of the McChesney lease and of the orders of the county court appointing Myers guardian of the estate of Mrs. Annie Bearden and ordering and approving the lease made by him to Miss McChesney.

R. E. Myers, for himself individually, also filed an answer to plaintiffs' petition, alleging his appointment and qualification as guardian and his actions thereunder all with the knowledge and consent of the plaintiffs; and that he had no individual interest in the lease. Also that he as guardian had contested the validity of the McChesney lease in the proceedings in the county court and district court by Miss McChesney to partition the mineral rights in the land in controversy, referred to above, in which judgment was rendered in favor of Miss McChesney.

Miss McChesney also filed an answer to plaintiffs' petition in which she pleaded the validity of the appointment of Myers as guardian and the orders authorizing and approving her lease. And by way of cross-action, she alleged the validity of her lease and sued for removal of plaintiffs' claims as a cloud upon her title, as against each and all the plaintiffs, naming them, and also against Mrs. Annie Bearden and against R. E. Myers, as her guardian.

Prior to the institution of that suit, and about the year 1915, Lee O. Bearden deserted his wife and family and left the state and never returned thereto to reside therein until about the month of August, 1928. At the time of the institution of the suit, and for more than seven years prior thereto, his whereabouts were unknown to his family or any of the other plaintiffs named in the suit, although they had made diligent search in order to communicate with him and have him join as plaintiff in the suit, but without success. The last tidings of him was a letter written by him to his sister, Mrs. Hattie Claiborne, on September 1, 1918, while in a government hospital in Arkansas, concerning his father's estate, reading as follows: "You ask me if I were willing for Will Kennedy to act as administrator. I don't suppose you all could get a better man and what you all do will be all right with me. Tho I think it would be better to get some one outside of the family or make them give bond, as tho they were an outsider."

Having been unable to locate him, the other parties plaintiffs included him as one also, for his benefit as well as their own.

R. E. Myers, as guardian of the estate of

Annie E. Bearden and in her behalf, also intervened in the suit. After the suit was filed, the court by separate order appointed F. V. Hinson as next friend of Annie E. Bearden to represent her in the suit, and he, as her next friend, filed a plea of intervention in her behalf. And Miss McChesney filed a cross-action for a validation of her lease, in addition to a plea of general denial of plaintiffs' petition. A final judgment was rendered in that case, from which no appeal was ever prosecuted. The judgment so renderd recites the appearance of all the plaintiffs in this suit, naming them, including Lee O. Bearden, and all other parties, in person and by attorneys, and the appearance of R. E. Myers, individually and as guardian of the estate of Annie E. Bearden, a person of unsound mind, and of Annie E. Bearden, in person and by and through her next friend, Frank Wilson, and Bessie Lee Griffin, a minor, by her next friend Frank Wilson and also by Mrs. Lou Griffin, trustee of her estate, and by their attorneys; also the appearance of defendant Annie E. Bearden, by her duly appointed guardian ad litem, F. V. Hinson. Following the recitals of such appearances of the parties, the judgment embodies numerous findings, including the following, in substance:

(a) That R. E. Myers had been duly and legally appointed guardian of the estate of Annie E. Bearden, non compos mentis, by the county court of Young county, and had duly qualified as such.

(b) That theretofore Annie E. Bearden had been duly and legally adjudged a person of unsound mind by the same court.

(c) That R. E. Myers, as guardian, had been duly authorized to make and execute to Nancy E. McChesney the oil lease claimed by her and for which she had paid a reasonable consideration.

(d) That Annie E. Bearden and the plaintiffs consented to and acquiesced in the adjudication of insanity of Annie E. Bearden and the appointment of R. E. Myers as guardian of her estate, and had held out Myers as such guardian to the public and to Nancy E. McChesney, who relied thereon.

(e) That the money paid by Nancy E. McChesney for said lease was by Myers, the guardian, turned over to her estate, and plaintiffs received benefits thereof, and for six years Myers acted as such guardian with the knowledge and consent of Annie E. Bearden and all plaintiffs in the case, all of whom are now estopped from denying the validity of the judgments and decrees by which Annie E. Bearden was adjudged insane and R. E. Myers was appointed as her guardian; and are also estopped from denying the validity of the leases executed by Myers as such guardian.

(f) That the partition of the oil and gas rights in the land in controversy made by the county court of Young county upon the application of Nancy E. McChesney in the administration of the estate of A. L. Bearden, deceased, and the partition made by the district court in cause No. 7494-B upon appeal from the county court judgment, were in all things valid and legal, and that Nancy E. McChesney is entitled upon her cross-bill to have her title to oil and gas rights under her leases, and to the lands set apart to her in said partition proceeding, quieted as against all parties to the suit, naming them, including Lee O. Bearden, and that all those parties take nothing as against her.

(g) Following the foregoing findings, the judgment embodies a specific description of the lands, the mineral rights in which were covered by the McChesney lease and theretofore set apart to her in the foregoing partition proceedings; the property so set apart being referred to as lots Nos. 1, 4, and 5, according to the plat made by the commissioners of partition, and also a like description of lots 2, 3, and 6, the mineral rights in which had been set apart to the plaintiffs in cause No. 7494-B in the prior partition proceedings; the oil and gas rights so set apart to those plaintiffs being subject to the life estate of Annie E. Bearden, which had been conveyed by her guardian to Nancy E. McChesney.

(h) Then follow further findings that all parties to the suit, for the purpose of speedily settling all controverted issues of title between them and finally ending those controversies, had agreed to a further division and partition of the mineral rights theretofore set apart to them, by the terms of which Nancy E. McChesney had relinquished to the plaintiffs all her mineral rights in lot No. 5, theretofore allotted to her in the partition, and also all her rights, title, and interest in and to the estate of Annie E. Bearden in the minerals in lots 2, 3, and 6, which had theretofore been set apart to the plaintiffs in the partition proceedings; which said agreement and settlement was then duly approved by the court as fair and reasonable to all parties concerned; and judgment was rendered fixing the titles of the respective parties in accordance with that agreement.

(i) Then follows a decree of partition in accordance with that agreement and in which the mineral rights which were set apart to the plaintiffs, including Lee O. Bearden, were decreed to be vested in them in the proportions fixed by the will of A. L. Bearden.

(j) There was a further finding that all parties were entitled to a partition of the property, but that the same was not susceptible of partition in kind, and that in order to make the same, a sale of the whole was necessary.

(k) Then follows the appointment of R. V. Tidwell as receiver to sell the interest so set apart to the plaintiffs and make report of his action to the court, to the end that the pro-

ceeds of such sale be divided among the plaintiffs according to their respective interest. (However, no sale was ever made by the receiver.)

(l) There was a further provision denying to Annie E. Bearden the right to open oil and gas wells on the property so set apart to the plaintiffs or to interfere with the plaintiffs' possession of the same by reason of her life estate therein.

(m) Then follows findings of the necessity for an immediate development of the property so set apart to the plaintiffs for oil and gas, in order to avoid drainage therefrom through wells drilled on property adjacent thereto; and in order to accomplish that purpose it was necessary to appoint a receiver to take charge of said tracts and explore the same for oil, and R. V. Tidwell was appointed receiver, and he duly qualified as such by taking the oath and giving the bond fixed by the court, with further power to execute oil and gas leases on that property and to collect the rents and revenues arising therefrom.

(n) There was a further finding that Annie E. Bearden was 84 years old and was entitled to receive $500 from oil and gas leases to be so made by the receiver.

On September 20, 1924, the district court, in cause No. 7473–B, approved a lease by Tidwell, the receiver, to the Panhandle Refining Company and Harry Hines, of 262½ acres of land out of the tract in controversy. The consideration for said lease was a payment of a one-eighth royalty of all the oil produced on the land and in addition thereto $68,500 in cash, and $51,375 out of the lessees' fourteen-sixteenths of the oil produced from the land, which was the lessees' portion after deducting from the total a one-eighth royalty. The lease so taken was duly filed for record on September 20, 1924. The lessees assigned the lease to the Texas Company, a corporation, who is one of the defendants in the suits now before us, and that company proceeded at once to develop the lease so taken and produced therefrom large quantities of oil. On the same day the lease was executed, Tidwell tendered his resignation as receiver, which was forthwith accepted, and immediately Frank H. Wilson was appointed receiver to succeed him. Wilson qualified as such by filing the bond fixed by the court, which was duly approved on September 20, 1924. He took over from Tidwell the money and contract which he had received from the lessees as consideration for the lease, and thereafter collected from the Texas Company the royalties and the additional oil provided for in the lease as the same was produced. On the 22d day of September, 1924, all the devisees named in the will of A. L. Bearden, other than Annie E. Bearden and Lee O. Bearden, executed a written contract ratifying and confirming the lease so made by Tidwell, as receiver, and R. E. Bearden and

Pleasant Bearden also executed it as executors of the estate. That instrument also purported on its face to bind the signers as expectant heirs and devisees of Annie E. Bearden, the mother, which apparently was intended as a warranty covering rights that might be thereafter acquired from their mother by descent or devise; and it also included recitals that the signers recognized "the validity of the guardianship proceedings on the estate of said Annie E. Bearden, non compos mentis, and the validity of the judgment in cause No. 7494–B, above mentioned, upon the said Annie E. Bearden and her heirs at law."

Lee O. Bearden instituted his present suit on February 15, 1929, and in his pleadings he sought to set aside the judgment in cause No. 8025 wherein his children recovered title and for the oil royalties belonging to him upon allegations that he was dead, because of a lack of jurisdiction of the court to render the same; he then being alive and the judgment being rendered in the absence of any appearance by him and without his knowledge or consent. And in that connection he prayed for a recovery against those children for all they had recovered against him.

The grounds of attack upon the judgments rendered in causes Nos. 7494–B and 7473–B, and by reason of which he alleged those judgments were void, were in substance: (a) That the court never acquired jurisdiction over him or his interest in the property involved by any method known to the law, in that he did not appear in the case nor was he served with any citation, and knew nothing of those proceedings, and did not authorize any one to appear for him and never in any way ratified the same. (b) That R. E. Myers, who appeared as guardian for Annie E. Bearden, a non compos mentis, was not authorized to represent her, and that the order of court appointing him was void because prior to such appointment and prior to the application therefor, Mrs. Annie E. Bearden had never been adjudged a lunatic, in accordance with the provisions of chapter 12, title 69, Rev. Civ. Statutes, beginning with article 4267 and subsequent articles. (c) That the land in controversy was the homestead of Mrs. Annie E. Bearden, and the partitions and divisions of it shown in the judgments in those two cases was contrary to the Constitution and statutes of the state which protect the homestead. (d) That said partitions were also in violation of the terms of the will of A. L. Bearden, which gave to Annie E. Bearden a life estate in one-half of the tract in controversy and also provided that no action should be had in the administration of the estate other than the return of inventory and appraisement thereof and a list of claims belonging thereto. (e) The unauthorized appearance for him by other plaintiffs in cause No. 7473–B was a fraud upon him. (f) That by reason of the proceedings taken in said two causes, unless

set aside, he has been deprived of his title in the tract in controversy and of the oil produced therefrom which has been converted by the defendants, in the sum of one tenth of $115,000. (g) That he had a meritorious defense to both of said suits and to the action of the county court in authorizing the McChesney lease, and would have defeated all proceedings taken therein if he had known of their pendency; and he was not chargeable with negligence in failing to present such defenses because he had no notice thereof.

The present suit by E. B. Ritchie, as guardian of the estate of Mrs. Annie Bearden, non compos mentis, was instituted on August 16, 1929; and the cross-action of Mrs. Bessie Lee Griffin, joined by her husband, and being another of the three consolidated suits, was instituted on September 3, 1929. In both of the suits last mentioned, the judgments in causes Nos. 7494–B and 7473–B were attacked on grounds substantially the same as those relied on by Lee O. Bearden and recited above, and Bessie Lee Griffin's attack was on these further grounds: First, lack of jurisdiction of district court to vacate partition made by probate court; second, suit in cause No. 7473–B was for sole purpose of a receivership; third, county court exclusive jurisdiction to lease, since Annie E. Bearden, non compos mentis, and Bessie Lee Griffin and other minors, were interested therein; fourth, she was a minor without a guardian and Frank Wilson disqualified to act for her as next friend because his children were interested in property, as was also Mrs. Lou Griffin to represent her as trustee, because she was likewise interested; fifth, no showing in petition of pending administration or lack of necessity for such; sixth, the lease sold by Tidwell for a grossly inadequate price. And a further ground of attack by E. B. Ritchie, guardian, was fraud on the part of plaintiffs, as hereinafter shown.

We deem it sufficient to say that all parties to the suits who were adversely interested to the rights asserted by the plaintiffs in those suits filed pleadings in which issue was joined upon all the allegations relied on by the plaintiffs for the relief sought by them. Furthermore, defendants Nancy E. McChesney and the Texas Company each pleaded the two and four years' statutes of limitation and estoppel based on the former judgments, as special defenses.

There was a plea of intervention in the suit of Lee O. Bearden, filed by Mrs. Jennie Estella Bearden, in behalf of herself and as next friend of her minor daughter, Myra Elizabeth Bearden. According to allegations in that plea—which were sustained upon the trial by uncontroverted proof—on June 12, 1917, in the state of California, the intervener, whose name at that time was Jennie Estella Cook, was in good faith induced by Lee O. Bearden to enter into a supposed marriage relation, by leading her to believe that he was then an unmarried man, when in fact he had a wife, Hattie Bearden, then living in Texas and from whom he had never been divorced and was never divorced; that the minor daughter of the intervener, Myra Elizabeth Bearden, was the child of that putative marriage; that soon after the supposed marriage, Lee O. Bearden deserted the intervener and the child without making any provision for their support, and that ever since he left them he has failed and refused to contribute anything to their support; that the child is now eleven years old and without means of support and that the intervener has been compelled to support her from her own earnings, and in doing so has incurred expenses aggregating $3,000. The mother of the child sought a recovery against Lee O. Bearden for the amount which she had so expended for the support and maintenance of the child; and she also sought a judgment fixing the amount necessary for the maintenance, support, and education of the child during her minority as a charge and lien on the property or property rights that may be awarded to Lee O. Bearden in the trial of the suit.

Upon the trial a judgment was rendered granting the relief prayed for in that intervention, which was by consent of the intervener and Lee O. Bearden; and accordingly that intervention will not be further noticed.

As to all of the other parties, there was a trial before a jury, all parties appearing by attorneys, and W. P. McLean, attorney, appearing as guardian ad litem for Mrs. Annie E. Bearden by appointment of the court; and after the conclusion of the evidence, the court instructed a verdict for the defendants; and in accordance with the verdict returned, in obedience to that instruction, judgment was rendered as follows:

(a) Denying plaintiffs in all three of the consolidated cases as against all other parties to the suit the right to set aside the judgments rendered in causes Nos. 7494–B and 7473–B; and expressly decreeing as valid both of those judgments and also the orders of the county court appointing R. E. Myers and Frank H. Wilson as guardians of the estate of Annie E. Bearden. Also denying those plaintiffs any recovery of money or other relief except a recovery in favor of Lee O. Bearden against the Texas Company for his portion of the royalties hereafter accruing on the lease held by that company and the royalties which have been withheld by the Texas Company for his benefit awaiting the final disposition of this case.

(b) Granting the prayers of the Texas Company, Nancy E. McChesney, and all other parties on their cross-actions against the plaintiffs, including the devisees under the will of A. L. Bearden, deceased, and Annie E. Bearden and their assignees and the heirs and devisees of those who have died, for removal

456

of the claims asserted by the plaintiffs in those three suits, as clouds upon the titles of the respective complainants in those cross-actions.

(c) Awarding a recovery in favor of Lee O. Bearden against Ima Jean Raby and his other two children for the money and title recovered in cause No. 8025 noted above.

(d) Decreeing title in the plaintiffs in accordance with the provisions of the will of A. L. Bearden, deceased, except in so far as the same were affected by the judgments in causes Nos. 7494–B and 7473–B, and proceedings thereunder, including the lease executed by Tidwell, the receiver, to the assignor of the Texas Company; and the lease executed by R. E. Myers as guardian of the estate of Annie E. Bearden to Nancy E. McChesney under authority of the county court.

There were other provisions in the judgment which it is not necessary to mention, since they are not material to any questions presented on this appeal.

The plaintiffs in all three of the consolidated cases have prosecuted appeals.

■ Lee O. Bearden has waived any right to set aside the judgment rendered against him in cause No. 8025 in favor of Ima Jean Raby and two others of his children on the grounds alleged, since he elected to sue and recover, and did recover, of those children all they had received under that judgment; thus treating it as valid and seeking to recover the losses he had sustained as a consequence thereof. 2 Freeman on Judgments (5th Ed.) § 631, p. 1329.

On the trial, the interests in the 525-acre tract acquired by plaintiffs under the will of A. L. Bearden, deceased, were never questioned except in so far as they were affected by the judgments in causes 7494–B and 7473–B, and the proceedings thereunder, including the partitions of the property and the execution by Tidwell, as receiver, of the lease to the Panhandle Refining Company and Harry Hines, which was later assigned to the Texas Company; and the lease theretofore executed to Nancy E. McChesney by R. E. Myers as guardian of the estate of Mrs. Annie E. Bearden, non compos mentis, under order of the county court wherein the guardianship was pending. It follows, therefore, that the controlling and decisive issues are whether or not the orders of the county court adjudging Mrs. Annie E. Bearden to be of unsound mind and appointing R. E. Myers the guardian of her estate, and authorizing the execution of the lease to Nancy E. McChesney, and the subsequent judgments in causes Nos. 7494–B and 7473–B, and all proceedings thereunder should be declared void either in whole or in part.

■ The grounds for vacating a judgment are lack of jurisdiction of the person or subject-matter, or because the rendition of the judgment was not within the powers granted by law to the court rendering it, or fraud, accident, or mistake. 1 Freeman on Judgments (5th Ed.) par. 325, p. 649; par. 333, pp. 666, 667; United States Use of Wilson v. Walker, 109 U. S. 258, 3 S. Ct. 277, 27 L. Ed. 927. In 7 R. C. L. p. 1029, the following is said: "In the sense, however, in which the term ordinarily is used, jurisdiction may be concisely stated to be the right to adjudicate concerning the subject matter in a given case. The tendency of modern decisions, however, is to enlarge the definition of jurisdiction to make it include not only the power to hear and determine, but also the power to render the particular judgment in the particular case."

■ The attack on the judgments of the district court in causes Nos. 7494–B and 7473–B were direct attacks by actions in equity in the nature of a bill of review. In the pleadings attacking those judgments there was also an attack made on the orders of the county court adjudging Mrs. Annie E. Bearden to be of unsound mind and appointing R. E. Myers the guardian of her estate, and the further order authorizing the execution by Myers of the lease to Nancy E. McChesney. That attack was clearly a collateral and not a direct attack, and in order to sustain it those orders must be declared absolutely void and not merely voidable; and the lack of jurisdiction of the person or subject-matter or of lawful authority to make those orders after jurisdiction was acquired by the county court, are the only grounds upon which that attack could be sustained. Furthermore, such lack of jurisdiction and lawful authority must appear affirmatively upon the face of the record, which includes not only the orders themselves, but also the pleadings upon which they were based. Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325; also 1st Freeman on Judgments (5th Ed.) par. 333, pp. 666, 667; McCamant v. McCamant (Tex. Civ. App.) 187 S. W. 1096, and decisions there cited.

■ In Crawford v. McDonald, supra, and 1 Freeman on Judgments (5th Ed.) par. 376, pp. 789 to 793, it is explained that the basic reason for the adoption of that rule arises from a principle of public policy having for its object the protection of property rights acquired under the judgment upon faith in its validity. Nor can the presumption in favor of its binding effect be overcome or questioned by proof dehors the record that jurisdiction was never in fact acquired; although such proof would be ground for reversal of the judgment on appeal therefrom; and for its nullification in a separate suit in equity in the nature of a bill of review instituted for such relief in the proper court.

■ The following is one of the provisions of section 16, article 5, of our state Constitu-

tion: "The county court shall have the general jurisdiction of a probate court; they shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration; settle accounts of executors; transact all business appertaining 'to deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the settlement, partition and distribution of estates of deceased persons; and to apprentice minors, as provided by law."

Title 69 of Rev. Statutes 1925, as amended (Vernon's Ann. Civ. St. art. 4102 et seq.), contains many provisions relating to guardianships, and the first article of chapter 1 of that title vests jurisdiction in county courts in the same terms as that constitutional provision. In other articles the county court is made a court of record by requiring all proceedings therein to be entered in the minutes of the court; that the proceedings for the appointment of a guardian shall be begun by written application filed in the county court which may be presented by any person, although it gives the preference right to the nearest of kin to the person of unsound mind or habitual drunkard, and the application must allege such facts as show jurisdiction of the court; also requiring the publication of citation to be issued upon the filing of such application. By article 4111 venue for the appointment of a guardian for a person of unsound mind is fixed in the county court where such person resides. And by article 4123 it is provided that:

"At a regular term of the court, after notice as required by law, the court may proceed to the appointment of a guardian. Before appointing a guardian, the court must be satisfied:

"1. That the person for whom a guardian is sought to be appointed is either a minor, a person of unsound mind or an habitual drunkard.

"2. That the court has jurisdiction of the case.

"3. That the person to be appointed guardian is not disqualified to act as such and is entitled thereto. * * *

"4. That the rights of persons or property are to be protected. All issues herein shall be determined by the court on hearing, unless a jury is demanded, but it shall not be a prerequisite to such appointment that there has been a jury trial, verdict and 'judgment that the person is of unsound mind, or is an habitual drunkard, nor is such person required to be present at the trial.

"The remedy herein provided is cumulative of that provided in Chapter 12 hereof, for the guardianship of persons of unsound mind and habitual drunkards, and may be resorted to without invoking the latter remedy."

Chapter 12, just referred to, of the same title, provides for proceedings necessary for the trial and adjudication of insane persons, and the following are articles 'contained in that chapter:

Article 4267: "Upon information that any person of the county is of unsound mind, or is an habitual drunkard, and is without a guardian, if satisfied that there is a good cause for the exercise of his jurisdiction, the county judge shall, either in term time or in vacation, issue a warrant to the proper officer commanding that such person be brought before him at a time and place named in such warrant."

Article 4268: "Any county officer who may discover any person who resides in the county to be of unsound mind, and without a guardian, shall file information thereof with the county judge, who shall issue a proper warrant."

Article 4269 prescribes what shall be shown in the information so filed; article 4270 requires the judge to empanel a jury to determine whether such person is of unsound mind or an habitual drunkard.

Article 4271: "The case shall be docketed in the name of the county as plaintiff, and the person against whom the information is filed as defendant, and the proceedings and trial therein shall be governed by the same rules that govern in ordinary suits in the county court."

Article 4272: "If it be found by the jury that the defendant is of unsound mind or is an habitual drunkard, as charged, the court shall proceed, immediately and without further notice, to appoint a guardian of the person and estate of such defendant in the same manner as in the case of a minor."

It is to be noted that the whole procedure under chapter 12, referred to above, seems to contemplate that the actions thereunder shall be taken in the event only that theretofore no guardian has been appointed for the insane or habitual drunkard, since in article 4267 jurisdiction is given to the county court to issue a warrant as a preliminary step for adjudging a person to be insane or an habitual drunkard whenever such person "is without a guardian," and the same limitation is contained in article 4268, conferring upon any county officer authority to file information against such person before the county judge as a necessary basis for the issuance of a warrant. Those limitations in those statutes plainly imply that the county court has jurisdiction to appoint a guardian in the absence of those preliminary proceedings, as is expressly provided in the quoted provisions of article 4123.

458

In Greenwood v. Furr (Tex. Civ. App.) 251 S. W. 332; Ward v. Compton (Tex. Civ. App.) 203 S. W. 129; and Warrick v. Moore County (Tex. Civ. App.) 291 S. W. 950, it was held that unless a person has been first tried and adjudged to be of unsound mind upon the verdict of a jury, the appointment of a guardian of his person or estate is absolutely void. However, it is to be noted that those decisions were upon appeals involving direct attacks, and not collateral attacks made upon the orders of appointment; and, therefore, are distinguishable from the present suit by reason of that difference, as well as other differences of facts recited in those decisions. And evidently the word "void," there used, was used as meaning voidable only. It further appears that the conclusion reached in those cases was based principally upon the constitutional guaranty of the State Constitution (Article 1, Section 19), that "no citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised except by the due course of the law of the land," and the further guaranty of the right of trial by jury (Article 1, Section 15).

However, the constitutional guaranty of right of trial by jury relates to procedure after jurisdiction has been acquired, and cannot be looked to to determine such jurisdiction; especially is this true if the case does not involve a prosecution for crime. Patton v. United States, 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263; White v. White, 108 Tex. 570, 196 S. W. 508, L. R. A. 1918A, 339.

The following is quoted from 1 Freeman on Judgments (5th Ed.) § 365, p. 761 et seq.:

"In a previous section it was observed that pleadings bear a direct relation to jurisdiction. They present the controversy to the court and empower it to proceed in the cause. Regarded in that light, their office is a jurisdictional one and it is through them and by virtue of them that the court is put in control of the subject matter over which its general powers extend under the law. The parties are brought before the court by appropriate process, the subject matter is presented by some form of petition, bill, complaint, declaration or other application. It is apparent, then, that if the pleading satisfies this requirement and discloses a subject matter within a class over which the court's powers extend, it will suffice when made the basis of a collateral objection, irrespective of the completeness or quality of the allegations or their adequacy to justify the relief sought, or of any defects, irregularities or imperfections of form or substance. It is sufficient that the allegations challenge a judicial inquiry. For jurisdiction does not depend upon the sufficiency or fullness of the statement of the cause of action pleaded, nor is it of any importance collaterally whether the pleading does or does not state a cause of action, providing it sets forth a case within the court's powers. * * *

"A pleading which is adequate to bring the subject matter before the court may be faulty in many respects, even in its averments of material elements of the cause, and yet sustain the judgment against impeachment. The judgment, therefore, would not be open to an attack of that character merely because there are no averments in the pleadings, or else defective averments, concerning such matters as the performance of conditions precedent or the taking of necessary steps preliminary to suit, as where a stockholder suing on behalf of the corporation fails to set forth an effort by him to procure action by the corporation."

In Martin v. Robinson, 67 Tex. 368, 3 S. W. 550, 552, in an opinion by Justice Stayton, the following was said:

"That the county court for Nueces county was a court of record of general jurisdiction over all matters relating to the administration of the estates of deceased persons, is not an open question. [Citing cases.]

"When a court of record, having such jurisdiction, has assumed to exercise it in a given case, all presumptions are in favor of the validity of its proceedings; and if the record of such a court shows that the steps necessary to clothe it with power to act in the given case were taken, or if the record be silent upon this subject, then its judgment, order, or decree must be held conclusive in any other court of the same sovereignty when collaterally called in question." (Citing cases.)

In Sloan v. Woods, 25 S.W.(2d) 309, 310, it was held by the Commission of Appeals, with approval of the Supreme Court, that a sale of real estate belonging to a minor by his guardian under order of the county court was not void as against a collateral attack, even though the order of sale did not "require the guardian to file a good and sufficient bond, subject to the approval of the court, in an amount equal to twice the amount for which such real estate is sold"; and even though article 4201 authorizing such a sale specifically provides that the order for sale of real estate belonging to the minor shall embody such requirement; and the facts in that case showed beyond controversy that no such bond had been required or given by the guardian before the sale was made. And as showing the far-reaching scope of the general rule in this state, the court in that decision reversed the judgment of this court in the same case, reported in 9 S.W.(2d) 485, wherein this court, while recognizing the general rule of presumption in favor of the validity of judgments as against a collateral attack, further held that article 4201 of the Statutes was mandatory in its character and the power therein given to a guardian could be exercised only in the manner and under the circumstances

specified, and therefore constituted an exception to the general rule, in accordance with many authorities there cited in other jurisdictions. However, the Commission of Appeals construed that provision of the statute as being directory and not mandatory.

■ Upon the filing of the applications of Myers and Wilson for guardianship of Mrs. Annie Bearden, alleging that she was of unsound mind and that a necessity existed for the appointment of a guardian of her estate, the jurisdiction of the county court to determine those issues attached. Hoffman v. Building & Loan Association, 85 Tex. 409, 22 S. W. 154. And that jurisdiction was general, under the strict letter of the Constitution, and the same could not be abrogated or modified by any act of the Legislature. And since it did not affirmatively appear either in the orders appointing those guardians or in the applications made for such appointments that Mrs. Annie Bearden had not theretofore been tried and adjudged to be a person of unsound mind, under the provisions of chapter 12, title 69, of our statutes—if that fact was necessary to confer jurisdiction—it follows that neither those orders nor any subsequent orders of the county court, including the orders authorizing and empowering the guardian to execute the lease to Miss McChesney and approving the same, were void as against a collateral attack; and, accordingly, all assignments and propositions to the contrary are overruled.

■ We shall next discuss the attack made on the judgment in cause No. 7494–B, rendered by the district court of Young county. The pleadings of the plaintiffs in the suits now before us involved direct attacks on the order of that court partitioning the property in controversy made in the administration of the estate of A. L. Bearden, deceased. It may be said that in the rendition of that judgment the district court's jurisdiction was the same as that of the county court, from which the case had been brought by appeal. In that case the court acquired jurisdiction of the persons and estates of Mrs. Annie E. Bearden, through pleadings filed in her behalf by R. E. Myers; and of all devisees of A. L. Bearden, deceased, including Lee O. Bearden, through publication of citation as required by the statutes, followed by pleadings in their behalf filed by the executors; and also of Bessie Lee Morgan, minor, through Frank Wilson, her next friend, and also through Mrs. Lou Griffin, as trustee of her estate, both of whom appeared for her upon the trial; and of Miss McChesney, through pleadings filed by her. It is also true that under the provisions of the Constitution and statutes, the court acquired general jurisdiction of the subject-matter.

The question then arises as to whether or not it had lawful authority to decree the partition shown in that judgment. It had lawful authority so to do unless the same was prohibited by the Constitution or some statute. But it is insisted by appellants, in substance, that even though the probate court acquired general jurisdiction to decree a partition of the estate of A. L. Bearden, deceased, it lacked lawful authority to make the partition that was decreed in cause No. 7494–B: (1) Because the same was in violation of section 52, art. 16, of our Constitution, which prohibits the partition of a homestead after the death of one of the spouses during the life of the survivor, or so long as he or she may elect to occupy it as a homestead; (2) because, in the proceedings for that partition, title of Miss McChesney's lease was challenged by the pleadings of the other parties and the probate court was without jurisdiction to determine that issue, since by the Constitution that jurisdiction was vested exclusively in the district court; (3) because the partition had the effect to abrogate the provision of the will of A. L. Bearden devising to Mrs. Annie E. Bearden his undivided half interest in the tract in controversy for her use and benefit during her life.

With respect to the first objection, we will say that since Mrs. Annie E. Bearden was hopelessly insane, it was impossible for her to elect to continue to occupy the property as a homestead, and whether or not she should do so or should be cared for at some other location, as was done, had to be determined by the probate court, whose duty it was to take such action in that respect as in the opinion of the court would be for her best interest. Furthermore, the provision of the Constitution did not in express terms or by implication prohibit such action. On the contrary, authority so to do was implied in the grant of general jurisdiction to "transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis and common drunkards, including the settlement, partition and distribution of estates of deceased persons and to apprentice minors, as provided by law."

And by the provisions of chapter 24, title 54, Rev. Statutes 1925 (articles 3598–3633), express authority is given to partition the estates of decedents, without any restriction or limitation prohibiting the partition of a homestead.

■ With respect to the second objection, the title to Miss McChesney's lease was not made a direct issue—it was incidental only, to the question whether or not Myers had been legally appointed as guardian. The pleadings filed in that case, contesting the partition for lack of title in Miss McChesney, were based solely on the contention that the appointment of Myers as Mrs. Bearden's guardian was void because it was made in the absence of a prior adjudication of lunacy, under the provisions of chapter 12, title 69, Rev. Statutes; and that without such preliminary adjudication of

lunacy the county court was without jurisdiction to make the appointment. It thus appears that the contest was simply an attack on the order appointing Myers' as guardian and the consequent execution of the lease by virtue thereof made in the same court and during the administration of the estate of A. L. Bearden. Clearly, the probate court had jurisdiction to determine whether or not the orders of appointment should be vacated to the same extent as it would have authority to vacate any other order during the administration. And it is to be noted further that Miss McChesney's claim of title under her lease was based exclusively on the validity of that order, and the execution of the lease by the guardian acting thereunder. Her claim of title grew out of the administration proceedings and was not a claim of title against the testator or against his estate by reason of facts dehors the administration. Hence, authorities cited by appellants, such as McMahan v. McMahan (Tex. Civ. App.) 175 S. W. 160, and other decisions therein noted, to the general effect that pending administration, the county court is without jurisdiction to adjudicate disputed issues of title to realty, have no proper application here. In all those decisions it appeared that the disputed claims of title arose from transactions foreign to the administration of estates, such as transfers from one heir to another, the validity of which was challenged; nor were those cases separate suits to set aside former judgments, as is true here.

■ With respect to the third objection, it is clear that the life estate devised to Mrs. Bearden was, like any other property owned by her, subject to partition, under the provisions of the statutes authorizing partitions of estates of decedents.

■ Nor could that partition be annulled in the present suits instituted to set it aside for any erroneous conclusions of law or lack of evidence, or as being contrary to the undisputed facts, or by reason of consent of the parties laboring under disability to give such consent, or by reason of the homestead character of the property partitioned, or for lack of necessity therefor. 1 Freeman on Judgments (5th Ed.) §§ 221, 222, pp. 434–437, inclusive; 15 R. C. L. pp. 835 to 840, and 875 to 879.

■ It cannot be doubted that in cause No. 7473–B the district court acquired jurisdiction of the subject-matter and of all the issues involved. While Lee O. Bearden was absent from the state and did not know of the institution of that suit, yet he was properly made a party therein by the other plaintiffs under the rule of virtual representation, since that suit was essentially an action in rem and the proceeding was necessary to the protection of his interests as well as that of all the other plaintiffs who were jointly interested

with him as tenants in common, and none of whom were antagonistic to him; the suit being instituted for the benefit of all the plaintiffs alike and all of whom were necessary parties. It did not lie in his power to prevent his coplaintiffs from protecting their interests in the property by leaving the state for parts unknown and remaining away for several years, concealing his whereabouts from the knowledge of the other parties in interest, and thereby depriving them of their rights to protect their interests by the suit that was instituted. Especially is that true since it seems from the letter he wrote to his sister, Mrs. Griffin, set out above, that it was his desire that the other devisees of the will of A. L. Bearden should represent his interest generally as well as their own in probate proceedings pertaining to the land in controversy. Story's Equity Pleadings (10th Ed.) §§ 120, 142; 2 R. C. L. p. 669; 15 R. C. L. p. 1024; 42 Corpus Juris, pp. 45, 46. The court also acquired jurisdiction of all other persons to be affected by the judgment in that suit by reason of the pleadings filed by them, including pleadings filed by R. E. Myers, as guardian of the estate of Mrs. Annie E. Bearden, non compos mentis, and by Frank Wilson, as next friend of Mrs. Annie E. Bearden, theretofore appointed by the court as such next friend; also pleadings filed by Mrs. Annie E. Bearden in her own right, signed by attorneys for her, who were likewise attorneys for the plaintiff; and pleadings filed by Frank Wilson as next friend of Bessie Lee Morgan, now Bessie Lee Griffin. And with respect to the authority of a next friend appearing in behalf of another by permission of the court, see article 1994, Rev. Civ. Statutes 1925.

■ It thus appears that in both causes Nos. 7494–B and 7473–B, the court acquired jurisdiction of the subject-matters involved and of all the parties interested therein, and that the probate court had lawful authority to decree the partition in cause No. 7494–B; and that at all events, the district court had lawful authority to confirm that partition in cause No. 7473–B and decree another in its stead. Article 1995, subd. 18, Rev. St. 1925. And no appeal was prosecuted from either of those judgments.

It follows then that the only possible grounds left for vacating either of those judgments would be for fraud, accident, or mistake.

The pleadings of the plaintiffs in the present suits did not present the issue of accident or mistake preventing them from appearing in those cases and there asserting the rights pleaded in these cases, all without fault on their part, such as would in equity furnish grounds for vacating those judgments, as defined and explained in 3 Freeman on Judgments (5th Ed.) § 1246, p. 2593; § 1247, p. 2597; nor any mistake or inadvertence of the court

causing the rendition of different judgments from the ones intended, as defined in 1 Freeman on Judgments (5th Ed.) § 220, p. 422.

■ Nor do we believe that any of the pleadings of the plaintiffs was legally sufficient to present the issue of fraud as a ground for vacating either of those former judgments, the necessary elements of which are defined and explained in Freeman on Judgments, vol. 3 (5th Ed.) § 1238, p. 2580; § 1242, p. 2586, and consisting of some character of deception practiced upon the complainants by adverse parties, or violation of some agreement or some other unconscionable advantage taken by them, by reason of which plaintiffs were prevented from presenting defenses which would have led to the rendition of judgments more favorable to them.

As noted already, the grounds of fraud alleged by Lee O. Bearden were, in substance, that by means of those former judgments he had been deprived of substantial rights of property without his knowledge of the pendency of those suits, and in the absence of any jurisdiction acquired by the courts over him or his property; and which judgments were procured by the defendants in the present suit with full knowledge of those facts. The fraud alleged by plaintiff E. B. Ritchie as guardian of Mrs. Annie Bearden consisted in allegations to the effect that the defendants in the present suit procured the rendition of the judgments in causes Nos. 7494–B and 7473–B by representations made by them to the court that Mrs. Annie Bearden was non compos mentis and that R. E. Myers had been duly and legally appointed her guardian and was authorized to represent her in those suits; and that the lease claimed by Nancy E. McChesney was a valid lease which had been made to her by Myers as Mrs. Annie Bearden's legally appointed guardian and thereby induced the rendition of the judgment in that suit; all of which representations were alleged to be untrue in that. Mrs. Annie E. Bearden had never been legally adjudicated to be of unsound mind before R. E. Myers was appointed as her guardian, and therefore that R. E. Myers had never been duly and legally appointed as guardian of her estate with authority to act as such, and by reason of that fact Nancy E. McChesney had never acquired a legal title to the lease claimed by her. Coupled with those allegations, there were further allegations to the effect that as a result of such misrepresentations the court in the partition of the land had erroneously awarded to Nancy E. McChesney a leasehold interest in seven-eighths of the land in controversy, leaving Annie E. Bearden "an undivided one-eighth royalty in less than half of the land and leaving such royalty and mineral interest subject to the seven-eighths working interest of Nancy E. McChesney." As shown above, the grounds of attack by Bessie Lee Griffin included those urged by the

other plaintiffs, just referred to, with additional reasons for the contention that the court was without jurisdiction to render judgment in cause No. 7473–B. There were further allegations by Lee O. Bearden and by E. B. Ritchie, guardian, and Bessie Lee Griffin, of meritorious defenses to the suits in those two causes.

It will be readily observed that those alleged misrepresentations were not of facts, but consisted merely of conclusions of law: and the only proof to sustain them consisted of pleadings filed in those cases, the interpretation of which was solely a question of law for the court.

■ In support of the allegations of fraud and as showing that that issue should have been submitted to the jury, appellants have cited evidence introduced upon the trial as follows: McFarlane & McFarlane were attorneys for Mrs. Annie E. Bearden in cause No. 7494–B, in which she challenged the validity of the order appointing R. E. Myers as guardian and of the lease executed by him to Nancy E. McChesney, on the ground that those orders were void because she had never been adjudged a lunatic prior to that appointment of Myers. As noted already, the judgment of partition in that suit was dated August 22, 1924. In cause No. 7473–B, the same attorneys represented all plaintiffs, in their petition filed July 23, 1924; and that suit was prosecuted against Nancy E. McChesney and Annie E. Bearden, who later intervened. On August 25, 1924, the same attorneys filed a plea of intervention for Mrs. Annie E. Bearden, adopting the pleadings of the plaintiffs in that suit, coupled with further allegations that the appointment of R. E. Myers as guardian and the lease executed to Miss McChesney by him and all other orders in that guardianship, were void for lack of an adjudication of insanity prior to the appointment of Myers. Another plea of intervention was filed on August 25, 1924, in that suit for Annie E Bearden, by Frank Wilson, as her next friend, likewise adopting plaintiffs' pleadings and attacking the appointment of Myers, guardian, on the same grounds as alleged by plaintiffs, and that pleading was also signed by McFarlane & McFarlane as attorneys for said next friend. The same attorneys, on September 20, 1924, filed a trial amendment in the names of the executors and in behalf of the devisees in the will of A. L. Bearden as remaindermen and interested in one-half of the property in controversy after the termination of Mrs. Annie E. Bearden's life estate, in which it was alleged that Annie E. Bearden "has been adjudged a person of unsound mind and praying that judgment be entered defining the respective interests of the remaindermen, * * * and that it be decreed that said life tenant have no right to explore for said minerals." In that pleading, the former decree of partition was alleged

with the further allegation that the same did not decree a partition as between the heirs and devisees of A. L. Bearden, who could not agree on a partition among themselves and some of whom were minors; also alleging that, for the purpose of finally settling all controversies between the different claimants, Nancy E. McChesney had assigned to plaintiffs certain mineral interests theretofore decreed to her. The pleading concludes with a prayer for another partition of the entire property. Those attorneys were employed to bring that suit for a contingent fee of 25 per cent. of whatever might be realized from leases to be executed by the receiver appointed, should one be appointed, and was allowed from the proceeds of the sale of the lease executed by Tidwell, the receiver, the sum of $29,316.41 for their services. Frank H. Wilson, as next friend, was allowed the sum of $10,980.94, and R. E. Bearden and Pleasant Bearden were each allowed the same amount; although the allowance to Wilson was for the minors he represented as their distributive shares of the proceeds of the sale under the will, as was also true of the allowances to R. E. and Pleasant Bearden.

The evidence further shows that the judgment rendered in that cause, No. 7473–B, was by agreement of all the parties, through their legal representatives appearing for them, and the evidence tended to show that in the new partition made by that judgment there was set apart to plaintiffs in those suits, especially Mrs. Annie E. Bearden, property rights of less value than what had been awarded to them in the former partition decree in cause No. 7494–B.

McFarlane & McFarlane have filed briefs here in behalf of several appellees, in which it is explained that the allegations in the trial amendment filed by them, referred to above, that Annie E. Bearden had been adjudged a person of unsound mind, was by reason of the prior adjudication of that fact in cause No. 7494–B, which had become final.

In the absence of any pleadings charging that the judgment in cause No. 7473–B was the result of a wrongful collusion between the parties to the agreement made the basis thereof, to deprive plaintiffs, or some of them, of valuable property rights, or else a willful and wrongful purpose to defraud the plaintiffs of their property rights, the facts just recited could be looked to for no other purpose except to show that the judgments were erroneous, as being contrary to the merits of the controversy—a question which cannot be raised to impeach the judgments—since they do not tend to show that the court in rendering the judgment was misled or deceived and but for which a judgment more favorable to any of the plaintiffs herein would have been rendered.

As said in Freeman on Judgments, vol. 3 (5th Ed.) § 1233, p. 2567: "It must be borne in mind that it is not fraud in the cause of action, but fraud in its management which entitled a party to relief. The fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. If the cause of action is vitiated by fraud, this is a defense which must be interposed, and unless its interposition is prevented by fraud, it cannot be asserted against the judgment; 'for judgments are impeachable for those frauds only which the court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to the merits between the parties. All mistakes and errors must be corrected from within by motion for a new trial, or to reopen the judgment, or by appeal.' The fraud must be 'in some matter other than the issue in controversy in the action.' "

To the same effect was the opinion in Reed v. Bryant (Tex. Civ. App.) 291 S. W. 605, and authorities there cited. See, also, 34 C. J. 473–478; 15 R. C. L. pp. 471–478.

It is to be noted further that in a suit in equity to vacate a judgment, such as the ones now before us, the court does not act in a revisory or appellate character; and in the absence of extrinsic facts justifying relief, such as fraud, accident, or mistake, if the court had jurisdiction and lawful authority to render it, the judgment must be taken as conclusive, even though it should appear to be clearly erroneous upon established facts, or resulted from erroneous admissions or exclusions of testimony, or erroneous conclusions of law drawn from the facts, or from pleadings which are the basis of the judgment. Freeman on Judgments, vol. 2, § 727, p. 1538; Id., vol. 3, § 1214, p. 2521.

However, if the right to set aside the judgments for lack of jurisdiction or fraud, accident, or mistake, had been established, then the recited facts could be considered in determining whether or not plaintiffs had a meritorious defense to any substantial portion of that judgment. And the court could not have taken the determination of that issue from the jury by an instructed verdict. Nor would it have been necessary for the jury to find that Lee O. Bearden would have appeared and prosecuted such defense had he known of the pendency of the suit.

The application for appointment of receiver in cause No. 7473–B was not the sole purpose of that suit, but was ancillary only to the proceedings to develop the property for oil and gas to the end that those minerals might not be drained away by wells on adjoining land, and the district court having acquired jurisdiction for that purpose, and as an incident thereto, had lawful authority and jurisdiction to appoint Tidwell receiver and to empower him to sell the lease to the Panhandle Refining Company and Harry Hines. And that judgment was binding upon Bessie

Lee Morgan since she was legally represented in that suit by Frank Wilson as her next friend, and also by Mrs. Lou Griffin, the trustee of her estate, even though she was a minor and not personally served with citation, and no guardian ad litem was appointed to represent her. Nor was Frank Wilson disqualified merely because his children were also interested in the land, but whose interest did not in any manner conflict with that of Bessie Lee Morgan. And the same is true of Mrs. Lou Griffin, who was made trustee for Bessie Lee Morgan's interest by the will of A. L. Bearden. - Revised Civil Statutes 1925, art. 1994. And the court had jurisdiction to revise or vacate the partition decree in cause No. 7494-B under the provisions of article 1995, subdivision 18, Rev. Statutes 1925. Indeed, jurisdiction of plaintiffs' suits here to set aside that judgment is given solely by that statute.

■ Even though it could be said that the foregoing conclusions we have reached with respect to the collateral attack upon the orders of the county court appointing Myers and Wilson guardians and the direct attack made upon the judgment in cause No. 7494-B, are erroneous, nevertheless the judgment in cause No. 7473-B conclusively establishes their validity and renders those judgments res adjudicata of the issues there involved, since the merits of those orders and decrees and the proceedings thereunder were specifically adjudicated and approved as valid in cause No. 7473-B.

■ We conclude further that the defense of estoppel as against Bessie Lee Griffin, née Bessie Lee Morgan, was conclusively established by her act in receiving from R. E. Bearden, as guardian on final settlement of the guardianship, several thousand dollars collected by him as royalties from the leases which are here assailed, and further royalties aggregating more than $1000 after the close of the guardianship in monthly installments covering more than a year; all of which receipts occurred after her marriage, and with no pleading or evidence of fraud inducing such action by her.

■ Furthermore, in the absence of an impeachment of the judgment for fraud, the defense of four years' limitation (Rev. St: 1925, art. 5529) urged by Miss McChesney and the Texas Company was conclusively established as against the suit of E. B. Ritchie, guardian of the estate of Mrs. Annie E. Bearden, and that of Mrs. Bessie Lee Griffin and husband, since they made appearances through legally authorized representatives in both causes Nos. 7494-B and 7473-B. Levy v. Roper, 113 Tex. 356, 256 S. W. 251. But whether or not, under the decision last cited, that defense was likewise established against Lee O. Bearden's suit to vacate the judgment in cause No. 7473-B, in which he appeared as plaintiff solely by virtual representation of his coplaintiffs, and was never cited and had no notice of that judgment until only a few months prior to his suit now before us, we shall not determine because not necessary in view of the conclusions already expressed. That statute of limitation would exclude the equitable defense of laches and stale demand urged by the Texas Company and Miss McChesney.

■ Furthermore, from that decision it follows that neither the homestead rights of Mrs. Annie E. Bearden, nor the fact that a life estate in one-half the land in controversy had been devised to her by A. L. Bearden, would in any event be available to Lee O. Bearden or Mrs. Bessie Lee Griffin as a ground for canceling the former judgments against them.

■ The following is the eleventh proposition presented in briefs of Lee O. Bearden: "The court erred in refusing to set aside the judgment in cause No. 8025, Ima Jean Raby et al. versus Frank H. Wilson, Receiver, being a judgment in the district court of Young County, in which Lee O. Bearden had been adjudged to be dead and the court having failed to give him judgment for his one-tenth interest in the fee title to the land; the court should have given judgment against all of the defendants and in favor of Lee O. Bearden for one tenth interest in the land."

As said already, the judgment in cause No. 8025 was rendered in 1926, during the March term of court of that year, which was nearly two years subsequent to the final judgments in causes No. 7494-B and 7473-B, and hence the title awarded to Ima Jean Raby and the other two children in cause No. 8025 was necessarily such title only as Lee O. Bearden then had after giving the prior partition and leases full force and effect. And the same title was decreed to him in the judgment from which this appeal is prosecuted; and the validity of that award has not been challenged on this appeal by any one. Hence, it is clear that the proposition quoted presents no error. And it is to be noted further that Lee O. Bearden also recovered of his children judgment for the oil royalties collected by them, under and by virtue of their recovery of title in cause No. 8025; and they have not appealed from that judgment.

And we will add that the record discloses that Mrs. Annie E. Bearden has been well cared for throughout the pendency of the guardianships of Myers and Wilson; that during a considerable portion of that time she has been in the home of her daughter, Mrs. Dunkle; that her guardians have collected for her benefit royalties from the oil leases in question in this case, aggregating large sums out of which all her necessities have been supplied; and that there is now on hand a balance of some $80,000 or more to be used for her care and support during

the rest of her life, exclusive of any revenues that may probably accrue to her from the same or other sources.

It further appears that she is now approximately ninety years of age, and her insanity will continue throughout the rest of her life, thus insuring the passage of any estate she may own at the date of her death to her heirs, according to the statutes of descent and distribution, and by reason thereof she cannot leave a will which would discriminate in favor of any of those heirs against the others, or in favor of any other persons.

In view of the foregoing conclusions, it becomes unnecessary to discuss or determine the many other questions so ably presented in the briefs of counsel for appellants, the merits of all of which are controlled by the issues discussed above; this opinion having been extended already to an unusual extent, but unavoidably so, by reason of the exceedingly voluminous records in different suits. And for the same reason the merits of other defenses presented by the different appellees will not be determined.

We conclude that the trial court did not err in instructing the verdict returned, and that all assignments of error presented should be overruled, and the judgment of the trial court should be affirmed in its entirety; and it is so ordered.

Costs of appeal are taxed against the respective plaintiffs in the three consolidated suits, all of whom are appellants here, share and share alike.

On Motion for Rehearing.

█ Upon a further examination of the record, we find that Bessie Lee Griffin (née Morgan) married during the month of August, 1927, and when she married she was a minor. Hence, while her alleged cause of action, if any, to set aside the judgments in causes Nos. 7494–B and 7473–B accrued some five years prior to the date of the filing of her present suit, yet limitation did not begin to run until her marriage, which was only two years before the institution of her present suit to set aside those former judgments. Therefore, the conclusion reached in our opinion on original hearing sustaining the defense of four years' limitation (Rev. St. 1925, art. 5529) as against her suit was erroneous, and the same is hereby withdrawn.

█ But we adhere to our former conclusion that the defense of estoppel as against Bessie Lee Griffin was conclusively established by her act in receiving from her former guardian on final settlement of the guardianship after her marriage, several thousand dollars collected by him as royalties from the lease which was assailed by her; and further receipts of royalties by her after her marriage in monthly installments covering more than a year, amounting to more than

$1,000, since such acts conclusively bound her to a ratification of the lease and of the judicial proceedings which culminated in its execution. The contention made in her motion for rehearing that estoppel could not be successfully invoked against her by reason of her coverture is without merit, as is well established by the decisions of this state. Crayton v. Munger, 9 Tex. 285; Guaranty Bond Bank v. Kelley (Tex. Com. App.) 13 S.W.(2d) 69; Speer on Marital Rights, par. 155; Simkins v. Searcy, 10 Tex. Civ. App. 406, 32 S. W. 849; Bingham v. Barley, 55 Tex. 281, 40 Am. Rep. 801; Daimwood v. Driscoll (Tex. Civ. App.) 151 S. W. 621; and other decisions therein noted.

In Lee O. Bearden's motion for rehearing, complaint is made of our conclusion that he waived his right to set aside the judgment in cause No. 8025 in favor of his three children, as being void, by reason of his election to accept the judgment rendered restoring to him title theretofore decreed to those children, with a further recovery for all the oil royalties they had received from the lease held by the Texas Company, and also a recovery from the Texas Company of the royalties accruing in the future under the same lease on the one-tenth interest in the land in controversy which was devised to him by his father A. L. Bearden; thus treating the former judgment as valid until restoration of title, with the profits therefrom, be made to him under the provisions of article 5541, Rev. Civ. Statutes of 1925, reading: "Any person absenting himself for seven years successively shall be presumed to be dead, unless proof be made that he was alive within that time; but an estate recovered on such presumption, if in a subsequent action or suit the person presumed to be dead shall be proved to be living, shall be restored to him with the rents and profits of the estate with legal interest during such time as he shall be deprived thereof."

The judgment so rendered in his favor was in accord with the provisions of that statute. Nor have we been cited to any testimony in the record offered to prove the market value of the oil royalties collected by those children, in order to support a judgment for damages for the wrongful conversion alleged in Lee O. Bearden's petition. And it was our conclusion that his alleged right to claim that the lease and the judgment in cause No. 7473–B under which it was executed was void, and to recover damages for conversion has been waived; in other words, that the doctrine of waiver, involving some of the elements of estoppel, is applicable here, irrespective of whether or not the other parties have been misled to their injury. As said by the Supreme Court of Illinois in Trapp v. Off, 194 Ill. 287, 62 N. E. 615, 621: "Where a party accepts the benefit of a decree, he cannot afterwards prosecute error to reverse it. Such

acceptance operates as an estoppel, and may be treated as a release of errors." Also, see Morgan v. Morgan, 171 Ark. 173, 283 S. W. 979; Boulder & Weld County Ditch Co. v. Lower Boulder Ditch Co., 22 Colo. 115, 43 P. 540; and other authorities to a like effect hereinafter noted.

It is true, as appears in our original opinion, that we did not pass upon the contention here made by the Texas Company, to the effect that Lee O. Bearden has waived his right to question the validity of its lease and of the judgment in cause No. 7473–B by authority of which the lease was executed, by reason of the fact, as shown in the record, that with his consent, the court entered a decree providing that the judgment against him in favor of his putative wife, Mrs. Jennie Estella Bearden, and her and his minor child, Myra Elizabeth Bearden, should be satisfied out of royalties hereafter to accrue on his one-tenth interest in the land in controversy under the lease held by the Texas Company, thus treating that lease and the judgment in cause No. 7473–B, under which it was executed, as valid and subsisting. That was one of the contentions we left undetermined, as we deemed the same unnecessary in view of other conclusions reached. However, in order to avoid the seeming inference from what is said in the motion for rehearing that we overruled that contention, we now sustain it, for the same reasons already expressed in discussing a like waiver noted above.

In Texas Pacific Coal & Oil Co. v. Kirtley (Tex. Civ. App.) 288 S. W. 619, it is pointed out that it is not necessary, in order for one to successfully invoke the doctrine of ratification of an unauthorized act or the rule of election between two remedies, to show prejudice to the complaining party. As said in Morgan v. Morgan, 171 Ark. 173, 283 S. W. 979, 980, "One cannot accept and derive a benefit from a decree without necessarily admitting its legality." Many other decisions to a like effect might be cited, such as Arthur v. Israel, 15 Colo. 147, 25 P. 81, 10 L. R. A. 693, 22 Am. St. Rep. 381; Trapp v. Off, 194 Ill. 287, 62 N. E. 615; Creamer v. Holbrook, 99 Ala. 52, 11 So. 830; Warner v. Hill, 153 Ga. 510, 112 S. E. 478; Sage v. Finney, 156 Mo. App. 30, 135 S. W. 996; Ashley v. Riser, 26 La. Ann. 711; Matlow v. Cox, 25 Tex. 578; Lowe v. Johnson (Tex. Civ. App.) 259 S. W. 1004.

The general rule that a plea of estoppel cannot be sustained in the absence of a showing that the party invoking it has been misled to his injury, which is discussed in many authorities cited in briefs of appellants, such as Gunn v. Mahaska County, 155 Iowa, 527, 136 N. W. 929; McKain v. Mullen, 29 L. R. A. (N. S.) 30; 21 C. J. 1207, 1208; Bannon v. Sewer Pipe Co., 136 Ky. 556, 119 S. W. 1170, 1173, 124 S. W. 843, is not applicable here. The controlling principle is that of waiver, which involves some of the elements of estoppel and is often so designated, and which, with respect to the issues of waiver discussed above, involves also the doctrine of election between two inconsistent remedies; and it is not necessary that the party invoking it must show that he has been misled to his injury by reliance upon the act of the other party. 40 Cyc. p. 255 et seq.; 20 C. J. pp. 4 to 40.

The decision of the Court of Civil Appeals of Eastland in Damron v. Rankin, 34 S.W. (2d) 360, is stressed by appellants to support their contention that the appointment of a guardian of Mrs. Annie E. Bearden, an insane, in the absence of a preliminary adjudication of insanity, was absolutely void, and subject to the attack made thereon by appellants; but the attack made in the case cited was by a separate suit instituted to set aside the appointment of a guardian for an insane person; and being a direct attack, the case is clearly distinguishable from the present suit. Appellants also cite the recent decision of the Amarillo Court of Civil Appeals in Dial v. Martin, reported in 37 S.W. (2d) 166. That was a suit instituted by Mrs. Gertrude Dial as executrix of the estate of J. C. Dial, deceased, and as guardian and next friend of her minor children to recover title to certain lands. In order to recover, it was necessary to annul a former consent decree of the probate court in the guardianship of the estate of the children, wherein Mrs. Dial had been appointed guardian of their estates, and which decree was later confirmed in another suit in the district court between the same parties. The Court of Civil Appeals sustained a collateral attack on the former judgment because no guardian ad litem was appointed to represent the minors, and further because the judgment was in violation of the terms of the will under which Mrs. Dial was acting as executor. It is therefore apparent that that case is distinguishable from the present suit.

In compliance with the request of appellants for additional findings, we will add to those recited in the original opinion the following:

The devise in favor of Mrs. Annie E. Bearden by A. L. Bearden reads as follows: "All of my property of which I may die seized and possessed, with the exception of the live-stock, shall be used, held and controlled by my wife, Annie E. Bearden, for her own use and profit for and during her life."

The judgment in cause No. 7473–B does not recite that Mrs. Annie E. Bearden appeared in person, but does recite that she, a non compos mentis, appeared by R. E. Myers, guardian of her estate, and his attorneys; and also

by her attorneys; also by F. V. Hinson as her next friend and as her duly appointed guardian ad litem, and by his attorneys.

In their pleadings in this case the appellants offered to do equity.

There are other requested findings which we believe are either immaterial, or else sufficiently shown in our original opinion.

As indicated above, the motion for rehearing by Mrs. Bessie Lee Griffin as to the defense of four years' limitation urged against her suit is granted; but in all other respects her motion for rehearing and the motions for rehearing by the other appellants, Lee O. Bearden and E. B. Ritchie, guardian of the estate of Annie E. Bearden, and the motion for rehearing by Frank H. Wilson as guardian of the estate of Annie E. Bearden, are all overruled. Except as shown above, appellants' motion for additional findings is likewise overruled.

The motion of appellants Lee O. Bearden and E. B. Ritchie, guardian of the estate of Annie E. Bearden, to retax costs is overruled.